## Herbert P. Crane and Lillian B. Stiles v. The People of the State of Illinois.

1. INDICTMENT—*Living in an Open State of Adultery.*—An indictment for living together in open state of adultery, which charges the offense in the language of the statute, is sufficient.

2. SAME—*Form of, Under the Statute.*—Section 408 of the criminal code, providing that every indictment shall be deemed sufficiently technical and correct which states the offense in the language of the statute creating it, was intended to do away with the technicality of the common law, and under it courts ought not to make use of those technicalities in so strictly construing the statute as to annul its reasonable scope and effect.

3. ADULTERY—*How Proven.*—The offense of adultery is sufficiently proven by circumstances which raise the presumption of cohabitation and unlawful intimacy.

4. SAME—*Evidence of Former Acts.*—On the trial of an indictment for living together in an open state of adultery, evidence tending to show continuous acts of improper intimacy between the defendants at different periods and places, before the commission of the offense alleged in the indictment, is competent to show the relation existing between the parties.

5. EVIDENCE—*Decrees, When Not Competent.*—On the trial of two persons for living in open adultery a decree previously entered in a divorce suit between one of the defendants and her husband is not admissible.

MR. JUSTICE HARKER dissents.

Indictment.—Error to County Court of Kane County; the Hon. MARCUS O. SOUTHWORTH, Judge, presiding. Heard in this court at the December term, 1895. Affirmed. Opinion filed June 1, 1896.

BARNUM, HUMPHREY & BARNUM, S. P. SHOPE and SAMUEL ALSCHULER, attorneys for plaintiffs in error.

FRANK W. JOSLYN, State's Attorney of Kane county, and HANCHETT & PLAIN, attorneys for defendant in error.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

The plaintiffs in error were indicted in the Kane County Circuit Court June 8, 1896, charged with living together in an open state of adultery contrary to the form of the statute and against the peace and dignity of the people of the State. The suit was certified to the County Court for trial May 22, 1895.

The case was tried by a jury in the County Court, resulting in a verdict of guilty as to both defendants. The court, after overruling a motion for a new trial, sentenced each defendant to pay a fine of $500 and costs, and to stand committed till such fine and costs were paid.

The plaintiffs in error moved the court to quash the indictment, and after conviction, in arrest of judgment, both of which motions were overruled by the court. This brings before us the question of the sufficiency of the indictment.

It consists of two counts. The first charges that the defendants " on the 8th day of April, 1895, at and within the county aforesaid (Kane Co.) did then and there unlawfully and illegally live together in an open state of adultery, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Illinois."

The second count charges that the defendants " did then

and there wrongfully, unlawfully and illegally, each with the other, live together in an open state of adultery, the said Herbert P. Crane, alias Bert Crane, being then and there a married man, having been previously married to one Jessie E. Doolittle, and the said Lizzie B. Stiles, alias Lillian B. Stiles, being then and there a married woman, having been previously married to one Everell D. Stiles, contrary to the form of the statute in such case made and provided," etc.

We are of the opinion that the averments in the indictment, being in the language of the statute, are sufficient. The section under which the indictment is framed, section 11 of the criminal code, provides: "If any man and woman shall live together in an open state of adultery or fornication, or adultery and fornication, every such person shall be fined," etc. Section 408 of the criminal code provides that "every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statute creating the offense, or so plainly that the nature of the offense may be easily understood by the jury." It is insisted by counsel for plaintiffs in error that this indictment is defective in not alleging that each of the plaintiffs in error were married to others than each other at and during the time the alleged offense was charged to have been committed; that the mere allegation that they "lived together each with the other in an open state of adultery" is not sufficient, but that there should be a charge *in extenso*, that each had a living husband or wife at the time and that the defendants were not married. We think, under the statute, such an allegation was unnecessary. The well known meaning of the word adultery is the illicit sexual connections of a man and woman who are not married to each other, and each of whom has a living husband or wife at the time, and the jury could easily understand that from the language of the statute.

The indictment in this case indicates the offense sufficiently to give the offender proper notice of the crime with

which he is charged by the mere adoption of the statutory terms.

In Connolly v. People, 2 Scam. 474, the court says that this section 408 of the criminal code was intended "to do away with those niceties and technicalities of the common law, which made distinctions where there was no difference, and which were thought often more to impede the administration of justice than to promote it." And we will add here that courts ought not to make use of those same "niceties and technicalities of the common law" in so strictly construing the statute as to annul its reasonable scope and effect. See Locher v. The People, 132 Ill. 504; Cannody v. People, 17 Ill. 158; West v. People 137 Ill. 189; Morton v. People, 47 Ill. 468. We also cite the cases in other States in point where indictments were drawn in the language of the statute on same charges as here, *i. e.*, living in open adultery. State v. Hilton, 6 Ala. 864; State v. Stevens, 63 Ind. 542; State v. Coach, 7 Blackf. Ind. 468; State v. Lashly, 84 N. C. 754; Swancoat v. State, 4 Texas App. 105.

Pridiord v. The People, 139 Ill. 50, is not in point. The court say in that case that the indictment was not in the language of the statute. Neither is the case of McNair v. People, 89 Ill. 441, similar in fact or principle to the case at bar. We therefore hold the indictment good, and that the court below committed no error in overruling plaintiff in error's motion to quash and in arrest.

The plaintiffs in error insist that the evidence is insufficient to support the verdict; that the court erred in admitting evidence of acts and conduct in other counties and States, anterior to the time covered by the indictment, because there was no incriminating evidence in the county where plaintiffs in error were charged with living in an open state of adultery, tending to prove the crime charged in that county; that proper instructions were refused for defendant—one and three, four and five; that the court erred in giving the eleventh, fourteenth and sixteenth instructions for the people; that the court erred in refusing to admit in evidence a certified copy of the decree of the Superior Court

of Cook County, dismissing the bill in case of Everell D. Stiles v. plaintiff in error Lillian B. Stiles, after hearing, for want of equity, which bill charged plaintiff in error with adultery with plaintiff in error Crane, and Mr. Stiles sought divorce on that ground; and lastly, the court erred in ruling on plaintiff in error's evidence.

The evidence in the record is very voluminous, as well as the briefs of counsel on both sides. The case has attracted a good deal of attention on account of the celebrity given the two divorce suits tried in Cook county, wherein Everell D. Stiles was complainant against his wife, one of the plaintiffs in error here, charging her with adultery with Mr. Crane, the other plaintiff in error; and Mr. Crane's wife against him, charging him with adultery with Mrs. Stiles, his co-defendant in this prosecution.

It is not practicable for us to go into a critical examination of the evidence introduced before the jury for and against the plaintiffs in error. The evidence. is too voluminous, and the circumstances too numerous to admit of it in an opinion of this court; and besides it is not necessary, as the only question for us to decide is, whether the evidence is sufficient to sustain the verdict.

It appears from the evidence that plaintiff in error Crane was married to his wife, Jessie Doolittle, February 22, 1883, and Mr. Stiles to his wife, Lillian Brower, June 25, 1884.

Stiles and Crane had been acquainted from boyhood, and their families soon became acquainted and visited at each other's homes, and attended places of amusement together. After a time an intimacy grew up between Mr. Crane and Mrs. Stiles. Mr. Crane was very fond of her. They were all living in Chicago.

The evidence tends so show that a close intimacy continued between Mrs. S. and Crane until, in May, 1891, Stiles went to Honduras on business, and stayed till September. During his absence, plaintiff in error Crane became a constant visitor at Mrs. Stiles' house. He spent several evenings each week with her, and it was testified to that he was admitted to her bedroom on one evening and stayed until

eleven o'clock, and also one other evening. In the winter of 1892, plaintiff in error spent several weeks at Pass Christian, Miss., going with her to New Orleans, and Mardi Gras with her. At New Orleans they stopped at the St. Charles hotel, and, as she wrote to him, had a " lovely " and " delightful " time. After visiting New York with his wife, Mr. Crane returned to Pass Christian and came home with Mrs. Stiles. At this time, as the evidence tended to show, there was an estrangement sprung up between Mr. Crane and his wife, and on July 18, 1892, Mrs. Stiles wrote Mrs. Crane a letter, trying to console her, and, as she claimed, trying to reconcile her and her husband. Among other things she says, " I confess freely that he (Crane) has been my center of interest from the first. * * * Bert has become more or less dependent on me for what pleasure he gets in town— by that I mean he would rather come here than go elsewhere. * * * I don't think I have the heart to forbid what to him *now* is his only pleasure while in town." She expresses her willingness to be done with Crane, if she sees it would do Mrs. Crane any good, at any sacrifice it might mean to her; but, until that time, she says, " I shall do all that is within my power for his comfort." As might have been expected under the circumstances, that time, in Mrs. Stiles' judgment, never came, and she continued to receive the ardent attentions of Mr. Crane.

The evidence tended to show improper intimacy between plaintiffs in error from that time, and shows acts, if the witnesses are to be believed, which was for the jury, that would lead a reasonable mind to the conclusion that plaintiffs in error had committed acts of adultery. On July 15, 1892, Stiles left his wife but came back in about a week, and on that night Mrs. Stiles left him and has never returned. The next day she sought and obtained an interview with Crane and in less than a month's time she had rented apartments in the Valparaiso flats, on Wabash avenue, Chicago. Crane guaranteed the rent and she borrowed of him from $800 to $900 to furnish and maintain the house. She moved into the flat about the 1st September, 1892. The evidence

fairly shows Mr. Crane visited there day and night. He was boarding with her and she claims paid her from $70 to $75 per month. Crane and his wife had not yet separated. He had a key to Mrs. Stiles' apartments. She was living there alone, in control of the house. They bore this relation four or five months, going riding and to the theater many times together. Witnesses testify to seeing her kiss him when they were alone and they were seen under suspicious circumstances.

After living in this way until the latter part of February, 1893, Crane went to Mississippi, where he kept some dogs, to hunt; Mrs. Stiles followed him in a few days, and they met at Holly Springs, Mississippi, and the evidence tends to show by appointment; thence went to New Orleans, stopped at same hotel together and went sight seeing, then went to Cuba and were very attentive to each other on the boat, stopped at the hotel Roma in Havana, took their meals together and during part of the time had adjoining rooms. They attended the opera and bull fight together. After traveling around together, they returned to Chicago together about 1st April, 1893; had been gone on the trip about a month. Before this trip Crane and his wife had separated. On their return they moved to 153 Oakley avenue, on the West Side, Chicago, and remained there from about the 1st May, 1893, until fall 1894.

Crane, as the evidence shows, was there almost constantly day and night till late hours; he kept his dress suit there; they took lunch together down town, and he was in her room a great deal. Witness Mrs. Rush testified to seeing Crane in Mrs. Stiles' room, up stairs, about half-past seven, when the gas was lighted "throw his arms around Mrs. Stiles and kiss her, and she kissed him, and saw same on other occasions," and the witness Baker saw them hugging and kissing in Mrs. Stiles' room; saw Crane pull off his coat and throw it on a chair, and they pinned a shawl up over the window. There was other evidence tending strongly to show that they were living in an adulterous state at Oakley avenue. They lived there till the fall of 1894, when

plaintiffs in error removed to St. Charles, Kane county, and took up their residence at the Lake House. In December, 1892, Mrs. Stiles had filed a bill in the Superior Court of Cook County against her husband for divorce, charging cruelty, and in May, 1893, Mr. Stiles had filed a cross-bill charging her with adultery with Mr. Crane. About the same time Mrs. Crane filed a bill for divorce against her husband, charging adultery with Mrs. Stiles. The trial in the Stiles case was begun in the fall of 1894, and while they were just in the midst of the divorce trial, plaintiffs in error went to St. Charles to look for a house. Plaintiffs in error lived together in St. Charles in great intimacy as they had been doing for two or three years. They lived in the same manner as husband and wife, although they did not pretend to be married. They went to St. Charles together when they moved; they went there together unpacking the goods; went together to make arrangements for buying the groceries; went and came together on the train and on the street. Crane paid Mrs. Stiles sixty dollars per month, more than enough to pay the rent and keep up the entire expenses, including servants.

Plaintiff in error Crane, to all appearances and as a matter of fact, as the evidence tended to show, controlled the entire house, although it was occupied in the name of Mrs. Stiles. He was a man of wealth and she without any means. She had but one boarder, and the income from this one boarder was sufficient to defray the expenses of the entire household. The boarder, the evidence tended strongly to show, was the proprietor and householder and he and Mrs. Stiles were living there and actually cohabiting together.

The statute provides that "the offense of adultery shall be sufficiently proved by circumstances which raise the presumption of cohabitation and unlawful intimacy." Sec. 12, Chap. 38, R. S.

It is insisted by counsel for plaintiff in error that there has been no immodest act or any act of adultery shown, much less habitual acts.

Greenleaf's Ev., Vol. 2, Sec. 41, lays down the law as follows: "And therefore it has been held that general cohabitation excluded the necessity of proof of particular facts. Ordinarily it is not necessary to prove the fact to have been committed at any particular time or place. It will be sufficient if the circumstances are such as to lead the court, traveling with every necessary caution, to this conclusion, which it has often drawn between persons living in the same house though not seen in the same bed or in any equivocal situation. It will neither be misled by equivocal appearance on the one hand, nor on the other will it suffer the object of the law to be eluded by any combination of parties to keep without the reach of direct and positive proof."

In this case while there was evidence tending to show that the parties cohabited together, there was the strongest motive to keep their true relation hid. The divorce suits against both parties were pending and great scandal had already been raised, by the former conduct of the parties. The plaintiffs in error had, the one a wife and the other a husband, from whom they were estranged, and on account of the unseeming intimacy of the plaintiffs in error with each other. We think the state of the evidence fully justified the court in admitting the evidence of former intimacy between the plaintiffs in error in Cook county and in other places than Kane county. It tends to throw a flood of light on the character of their relations in Kane county, which without it might be regarded as doubtful. The contention of counsel is that the love and esteem existing between plaintiffs in error, which was not denied, was platonic, and innocent of any improper conduct between them; in other words, that, " their passion grew and flourished in the bosom of innocence." That " while they adored each other yet they were afraid to love." While the jury might consider that such might be the case, yet on the other hand it was justified in believing that it would be a remarkable exception and not in accordance with human experience. The point made, that the court erred in not admitting the decree

in the Stiles divorce case in evidence, is not well taken. The decree was not made in a suit between the same parties litigant and could not bind the jury.

Without going into a critical examination of the instructions of plaintiffs in error refused and those complained of given for the people we will say we have examined them carefully, as well as those given in the case, and find no reversible error in either refusing or giving instructions or in rejecting or admitting evidence. The jury were fully and fairly instructed. We find no other error in the record. The case appears to have been fairly tried and the jury to have reached a justifiable conclusion. The sentence and judgment therefore is affirmed.

Mr. Justice Harker dissenting.

I am unable to concur with my associates, for the reason that there is not, in my opinion, sufficient evidence to sustain a judgment of conviction.

Whatever view may be taken of the conduct of the defendant and their relations prior to the time Mrs. Stiles moved to Kane county, there is no evidence that they lived in an open state of adultery there, or committed in that county a single act of adultery. Not one of the witnesses for the State, as to occurrences in Kane county, testified to an adulterous act or to anything like adulterous behavior or indecent familiarity between them. Upon the contrary the uncontradicted testimony of witnesses living at St. Charles, and so situated as to observe their daily conduct, was that their demeanor toward each other was entirely proper and not of a character to even excite suspicion of illicit relations.

The most that can be said of the evidence upon this branch of the case is that there was opportunity for illicit intercourse between the parties at St. Charles. The very gravamen of the charge is that the defendants lived together in Kane county in an adulterous state so as to scandalize and disgrace the community there. To my mind it is clear that the charge is not proven beyond a reasonable doubt by merely showing acts tending to prove adultery between the

parties prior to the time of moving to Kane county and showing opportunities merely to commit adultery in that county. To convict under such proof appears to me to be convicting of crime upon mere suspicion.