## HERBERT P. CRANE et al.

### v.

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed November 1, 1897.*

1. INDICTMENT—*when crime of "living together in open adultery" is sufficiently charged.* An indictment charging that the defendants did "wrongfully, unlawfully and illegally, each with the other, live together in an open state of adultery," one defendant "being then and there a married man, having been married to" a certain person, and the other defendant "being then and there a married woman," etc., sufficiently apprises the jury of the nature of the offense charged.

2. CRIMINAL LAW—*indictment for "living in open adultery"—proof of prior acts admissible.* Under an indictment charging the defendants with living together in open adultery, prior and subsequent acts of improper familiarity or of adultery between the parties, whether occurring in the same or other jurisdictions, may be proved in explanation of, or to characterize, the acts of the parties complained of as constituting the offense charged.

3. SAME—*trial—order of evidence rests largely with the court.* Under an indictment charging the defendants with living in an open state of adultery, the court may, in its discretion, admit evidence of prior acts of the parties occurring in other jurisdictions, before all the evidence has been adduced, to prove the particular offense charged.

4. SAME—*degree of proof required to establish charge of living in open adultery.* The question for the jury in determining whether the defendants are guilty of living together in open adultery, is not whether there was sufficient evidence of acts occurring in the particular county to prove their guilt beyond a reasonable doubt, but whether there was such evidence tending to establish their guilt as, when considered with all the evidence and as explained by evidence showing their prior illicit relations, is sufficient to prove the offense charged beyond a reasonable doubt.

5. SAME—*evidence held sufficient to warrant a conviction for crime of living in open adultery.* Evidence that the defendants, indicted for living in open adultery, were living, to all outward appearances, as husband and wife, that the man had a wife and the woman a husband living and undivorced, is sufficient, when considered with evidence proving prior illicit relations between them, to sustain a verdict of guilty.

*Crane v. People*, 65 Ill. App. 492, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Kane county; the Hon. M. O. SOUTHWORTH, Judge, presiding.

BARNUM, HUMPHREY & BARNUM, S. P. SHOPE, and SAMUEL ALSCHULER, for plaintiffs in error.

FRANK W. JOSLYN, State's Attorney, (HANCHETT & PLAIN, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

At the April term, 1895, of the circuit court of Kane county the plaintiffs in error, Herbert P. Crane and Lillian B. Stiles, were jointly indicted, under section 11 of the Criminal Code, for the offense of living together in an open state of adultery. The case was certified to the county court, where a trial was had before the court and a jury. The defendants therein were found guilty, and adjudged to pay a fine of $500 each, and costs. This writ of error is prosecuted from a judgment of affirmance rendered by the Appellate Court for the Second District.

The statute in question provides, that "if any man and woman shall live together in an open state of adultery or fornication, or adultery and fornication, every such person shall be fined not exceeding $500, or confined in the county jail not exceeding one year."

It is first contended by counsel for plaintiffs in error, that the trial court erred in overruling their motions, first, to quash the indictment; and second, to arrest the judgment. Both motions were based upon the same grounds, viz., the alleged insufficiency of the indictment.

It is claimed that the indictment was defective in not alleging that at the time of the commission of the alleged offense the defendants therein each had a spouse then living, and in not alleging that the defendants were not at the time married to each other. The second count charged that the defendants "did then and there wrong-

fully, unlawfully and illegally, each with the other, live together in an open state of adultery, the said Herbert P. Crane, *alias* Bert Crane, being then and there a married man, having been previously married to one Jessie E. Doolittle, and the said Lizzie B. Stiles, *alias* Lillian B. Stiles, being then and there a married woman, having been previously married to one Everell D. Stiles, contrary to the form of the statute in such case made and provided," etc.

Section 408 of the Criminal Code provides: "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statutes creating the offense, or so plainly that the nature of the offense may be easily understood by the jury."

We are of the opinion that the indictment was sufficient. The offense was stated in the terms and language of the statute, and so plainly that its nature could be easily understood by the jury. The defendants were charged with living in an open state of adultery. The word "adultery" has a well known meaning, and could not, at least as used in this indictment, have been misunderstood by the jury. The jury would know, as a matter of common knowledge,—common to all men,—that if the defendants were married to each other they could not, as supposed by counsel, commit adultery with each other. And as to the possibility of the offense being fornication instead of adultery, the allegation was that it was adultery, and if it were necessary to explain in the indictment why it was adultery, the indictment did so, by alleging that Crane was then and there a married man, having been previously married to one Jessie E. Doolittle, and that Mrs. Stiles was then and there a married woman, having been previously married to one Everell D. Stiles. The objections to the indictment are too technical, in view of the statute, to sustain a motion to quash or in arrest of judgment.

*Prichard* v. *People,* 149 Ill. 50, does not sustain counsel. It was there expressly said, and so appears, the offense was not stated in the terms or language of the statute.

The next assignment of error insisted upon by plaintiffs in error, and the one most elaborately argued and strenuously pressed upon our attention by their counsel, is that the judgment is not supported by the evidence. That the question thus raised is not free from difficulty must be apparent to any one familiar with the evidence in all its details, as contained in this record. It is, however, clear that plaintiffs in error assumed and continued in Kane county a relation which had all the outward appearances, without being so asserted by them, of the conjugal relation. This intimacy had commenced several years before, while they were living in the city of Chicago, had constantly increased, and had been characterized by many acts occurring outside of Kane county, showing, beyond all reasonable doubt, as we view the evidence, that they had committed adultery. Crane was estranged from his wife and living apart from her, and Mrs. Stiles was estranged from her husband and living apart from him, and the principal cause was the infatuation of plaintiffs in error with each other.

We shall not review to any considerable extent the evidence showing the guilty relations which existed between these parties before they took up their abode at St. Charles, in Kane county. Except as to Mrs. Crane, the wife of one of the plaintiffs in error, and Mr. Stiles, the husband of the other, the same witnesses, in the main, were called, and their testimony was in substance the same as in the divorce case of *Stiles* v. *Stiles,* which was on trial in the Superior Court of Cook county when these parties established themselves in St. Charles, in the fall of 1894. For a statement, in part, of the evidence upon which this court adjudged that these plaintiffs in error had committed adultery with each other, reference may be had to that case, reported in 167 Ill. 576.

It is not, of course, contended by the People that the plaintiffs in error could have been convicted, under this indictment, of the offense of living in an open state of adultery, committed outside of Kane county, but the evidence showing the guilty relations which they had assumed before taking up their abode in St. Charles was offered and admitted to prove the existence of an adulterous disposition between them. Whatever may have been said to the contrary in certain cases, it must now be regarded as settled law that in such cases prior acts of improper familiarity, or of adultery, between the parties, whether they occurred in the same jurisdiction or not, and even subsequent acts which tend to show a continued illicit relation between them, may be proved in explanation of, or as characterizing, the acts and conduct of the parties complained of as constituting the particular offense charged. 2 Greenleaf on Evidence, sec. 47; Wharton on Crim. Evidence, sec. 35; 2 Wharton on Crim. Law, sec. 1733; Bishop on Stat. Crimes, (2d ed.) secs. 680, 681; *People* v. *Jeness*, 5 Mich. 305; *Thayer* v. *Thayer*, 101 Mass. 111.

In the case last cited it was among other things said: "The evidence by which the act of adultery is proved is seldom direct. The natural secrecy of the act makes it ordinarily impossible to prove it, except by circumstantial evidence. The circumstances must be such, indeed, as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt. But when adulterous disposition is shown to exist between the parties at the time of the alleged act, then mere opportunity, with comparatively slight circumstances showing guilt, will be sufficient to justify the inference that criminal intercourse has actually taken place. The intent and disposition of the parties toward each other must give character to their relations, and can only be ascertained, as all moral qualities are, from the acts and declarations of the parties. It is true that the fact to be proved is the existence of a criminal disposition at the time of the act

charged; but the indications by which it is proved may extend, and ordinarily do extend, over a period of time both anterior and subsequent to it. The rules which govern human conduct, and which are known to common observation and experience, are to be applied in these cases, as in all other investigations of fact. An adulterous disposition existing in two persons toward each other is commonly of gradual development. It must have some duration, and does not suddenly subside. When once shown to exist, a strong inference arises that it has had and will have continuance, the duration and extent of which may be usually measured by the power which it exercises over the conduct of the parties. It is this character of permanency which justifies the inference of its existence at any particular point of time, from facts illustrating the preceding or subsequent relations of the parties." And in *State* v. *Witham*, 72 Me. 531, it was said: "Latterly courts and text-writers are rapidly falling in with the view that acts prior and also subsequent to the act charged in the indictment, when indicating a continuousness of illicit intercourse, are admissible in evidence as showing the relation and mutual disposition of the parties, the reception of such evidence to be largely controlled by the judge who tries the cause, and the evidence to be submitted to the jury with proper explanation of its purpose and effect."

It is urged, however, by plaintiffs in error, that evidence of such prior illicit relations is not admissible until after the evidence of the particular acts and conduct of the parties constituting the offense charged has been adduced, and that the trial court erred, in this case, first, in admitting the evidence of the prior improper relations of these parties before the evidence was heard as to their acts and conduct in Kane county; and second, that said court erred in admitting such evidence at any stage of the case, for the reason (as it is said) that, aside from such prior conduct, there was no incriminating evidence, or

evidence tending to prove, that the defendants were living together in an open state of adultery in Kane county at the time stated in the indictment.

It is manifestly true that without evidence tending to prove the particular offense charged, proof, however conclusive, of prior offenses committed in another jurisdiction would not authorize a conviction; and while the order of proof is generally within the sound discretion of the trial court, and its rulings in that regard will not be disturbed except where such discretion is abused to the prejudice of the complaining party, (*Mix* v. *Osby*, 62 Ill. 193, 2 Greenleaf on Evidence, sec. 47, *Spies* v. *People*, 122 Ill. 1, *Hall* v. *Barnes*, 82 id. 228,) still, in this case there was some evidence adduced tending to prove the particular offense charged, and as the evidence of the prior illicit relations of the parties was given in connection with the evidence showing their conduct in Kane county, we think no error was committed in refusing to compel the People to defer the production of their proof of prior acts until all other evidence for the prosecution of the crime charged had been heard. It might well be that the case could be much more clearly presented and the progress of the trial facilitated,—and that, too, without prejudice to the just rights of the defendants,—by producing the evidence as was done in this case, than in any other manner. Much discretion must necessarily be left to the trial courts to determine questions relating to the order in which the evidence may be produced, as well as many others having reference to the manner in which the trial shall be conducted.

The second branch of the objection of counsel brings up for consideration the main question presented for decision,—that is, the sufficiency of the evidence to sustain the verdict,—for if, as claimed, there was no incriminating evidence, or evidence tending to prove, that plaintiffs in error were living together in an open state of adultery in Kane county, aside from the evidence of their prior

lascivious conduct, then the court should have instructed the jury, as requested, to find the defendants not guilty, or should have granted a new trial. But is it true, as contended, that there was no such evidence tending to prove guilt? The question is not whether there was sufficient evidence of acts occurring in Kane county to prove their guilt beyond a reasonable doubt, but whether there was such evidence tending to establish their guilt as charged, and which, when taken in connection with all the evidence in the case and as explained by the evidence showing the prior illicit relations between the parties, was sufficient to prove the offense as laid, beyond all reasonable doubt. It is certainly true, as contended by counsel for plaintiffs in error, that aside from the fact of their living together in the same house under the circumstances mentioned below, no specific act of indecency, or even any caress, or any particular act, sign or language, done, manifested or expressed, between them, or by either to the other, in Kane county, showing an immoral relation between them, was shown. But, as relating to the occurrences in Kane county and immediately connected therewith, the evidence shows, and the jury were authorized to find, that plaintiff in error Crane, having a wife and children in Chicago with whom he no longer resided but was estranged from his wife, and plaintiff in error Mrs. Stiles, having a husband also residing in Chicago from whom she was estranged and separated and between whom a suit for divorce upon a charge of adultery against her with Crane was pending and on trial in Chicago, went together to St. Charles, in Kane county, and after looking at different houses together, a dwelling, called in the record the "Lake house," was selected as satisfactory, and Mrs. Stiles rented it. When her household effects arrived, Crane assisted her in unpacking them, the house was put in charge of a housekeeper, and Crane and Mrs. Stiles returned to Chicago. During the trial of the divorce case, which they both attended for about three

months, they came together to the Lake house in St.
Charles every Friday evening and remained until the fol-
lowing Monday morning, when they returned to attend
the trial in Chicago.    They spent much of their time to-
gether, going to and returning from Chicago or driving
in and about St. Charles.    About January 1, 1895, when
the divorce suit had terminated in Chicago, they estab-
lished themselves permanently, to all outward appear-
ances, at the Lake house in St. Charles.  He had abundant
means; she had none.  She paid $15 per month rent, and
he paid her $60 per month for his board, lodging, wash-
ing, mending, and stable room on the premises for his
horses which he kept there.  She had no boarder unless
he were one, and what he paid was sufficient to pay the
expenses of the establishment.    There was no other oc-
cupant of the premises or inmate of the house except a
house servant, (and a part of the time two,) a dressmaker
for a few weeks, and occasionally a visitor.  She had no
other business in St. Charles except to live there for the
benefit of her health, on the advice of her physician, as
she testified, and Crane had no other business there ex-
cept to recuperate his health.  He went to Chicago nearly
every day.    They sat and conversed together with fre-
quency in the house, on the veranda in hammocks, ate
their meals together, came and went together on the
streets and to and from Chicago, drove together in his
conveyances, and slept in opposite bedrooms upstairs
which opened into the same hall.    She drove in his con-
veyance to meet him at the train on his return, and he in
turn to meet her on similar occasions.    One witness tes-
tified that when Crane and Mrs. Stiles were both at home
they would generally be together in the back parlor.
Mrs. Stiles made a trip to New York in April, 1895, and
before leaving told her house servant that if she wanted
money in her absence, she, the servant, could get it from
Crane.    Crane frequently gave orders to dealers for nec-
essary articles to be sent to the house for household use.

So far as we are able to discover from the evidence, the manner of life led by Crane and Mrs. Stiles during this period when it is alleged that they were living in an open state of adultery, had all the outward appearances of a family, consisting of a husband and wife and servants, keeping house in the usual way, except, however, that they did not pretend to be married. There was no appearance of secrecy in their association, nor did they attempt to conceal their identity. When they first went to St. Charles, and for weeks afterward, the daily press contained voluminous accounts of the evidence in the divorce case and pictures of the interested parties. This notoriety caused them to be observed by the different witnesses, residents of St. Charles, with more than ordinary interest, but nothing more denoting their relations to each other was detected than what has already been stated.

Mrs. Stiles testified that she regarded Crane as her best friend among men, and he gave similar testimony of his friendly regard for her, and stated that he sometimes exhibited such regard by kissing her on rare occasions, such as birthdays or holidays; but both testified, in the most positive terms, that no act of sexual intercourse had ever taken place between them at St. Charles or elsewhere, and other witnesses testified to the uniform apparent propriety of their conduct when they were observed together in St. Charles. He testified, also, that when he first proposed to board with her at St. Charles she objected because of the troubles she had had, but that after talking the matter over with her mother and sisters it was concluded that there had been as much talk and trouble as there possibly could be, and it was finally agreed that he should go out to St. Charles and board with her. In the face of all the scandal that had been created by their prior association and conduct, and in face of the fact that the families of both parties had been broken up by such association and conduct, their infatuation with each other seems to have been too great for them to break away

from such association, and thus avoid at least the appearance of evil, but led them to wholly disregard even the dictates of common prudence, and not only (from all outward appearances) to continue relations previously existing, but to make such relations still more intimate, affording greater opportunities for the exercise of their secret pleasures. It may well be, and from the evidence it was probably true, that the health of each of them had become impaired, as testified to by them, and that the locality sought was conducive to its restoration; but that fact could not, by any inference which can be drawn from the evidence, have made it necessary for them to take up their abode there together and live as the evidence shows they lived. Section 12 of the act relating to the crime charged provides that "the offense of adultery shall be sufficiently proved by circumstances which raise the presumption of cohabitation and unlawful intimacy." The statute recognizes the inherent difficulty of proving by direct evidence any single act of adultery. The proof of circumstances which raise the presumption of cohabitation and unlawful intimacy is therefore sufficient to prove adultery.

In view of the nature of the offense, and of the evidence showing how these parties lived at St. Charles, and of the circumstances under which they went there to live, it cannot reasonably be said that there was no evidence tending to prove guilt, aside from the evidence of their previous illicit relations and conduct. Such last named evidence was therefore properly admitted. It showed the adulterous disposition and the illicit relations established between them, and without which the evidence would probably have been insufficient. But, as before said, without again reciting that evidence, which is sufficiently set out in the statement and opinion in *Stiles* v. *Stiles, supra*, and which, in the main, was reproduced in this case, we are satisfied it was sufficient to authorize the jury to believe that plaintiffs in error had committed

adultery together before they went to St. Charles, and that an unlawful intimacy had existed between them for several years.

We are referred to *Searls* v. *People,* 13 Ill. 597, *Miner* v. *People,* 58 id. 59, and other cases, as stating legal principles which should be applied to reverse this judgment. In the *Searls case* this court said: "In order to constitute this crime the parties must dwell together openly and notoriously, upon terms as if the conjugal relation existed between them,—in other words, they must cohabit together. There must be an habitual illicit intercourse between them. The object of the statute was to prohibit the public scandal and disgrace of the living together of persons of opposite sexes notoriously in illicit intimacy, which outrages public decency, having a demoralizing and debasing influence upon society. They may, indeed, live together in the same family; but if apparently chaste, regularly occupying separate apartments, a single instance of illicit intercourse surely would not constitute the crime of living together in an open state of fornication." This was said in commenting on an instruction which, it was said, would have authorized a conviction "if but a single delinquency were proved, even though the parties did not live together at all." But the rule was recognized in that case that "from the very nature of the case the offense must generally be proved by circumstances." We do not regard the decision in that case as in conflict with this. In the case at bar the parties charged did, as we think the evidence shows, live together openly. The outward relation was openly assumed. The jury doubtless believed that the role of boarder was a flimsy pretext, and the only question of difficulty was whether their relations were adulterous or not. A mere act, or even several acts, of adultery, without living together, would not constitute the offense, nor would the living together without the commission of adultery constitute it. But if the jury believed, from the evidence, beyond a

reasonable doubt, that they were in the habit of committing adultery together, then, with the evidence that they were openly living together, the offense was complete. It may, of course, possibly be true that no act of adultery ever occurred between the plaintiffs in error, as they testified; but when men and women assume those relations, commit those indiscretions and surround themselves with the circumstances which, by the common consent of mankind, based upon human experience and observation, lead to but one conclusion,—that of the existence of an adulterous relation between them,—they can have no reason to expect that courts of justice will put a different interpretation upon their conduct, and by some process of artificial reasoning refuse belief when all the world would be convinced.

Complaint is also made of the rulings of the court in the admission and exclusion of evidence and in giving and refusing instructions, but after a careful consideration of the questions thus presented we are unable to find that any harmful error was committed. The instructions were numerous and voluminous, but great care seems to have been exercised in their preparation and submission to the jury. The rights of plaintiffs in error were carefully guarded. The jury were told, over and over, that they could not convict the defendants of any offense committed outside of Kane county nor upon any charge except that contained in the indictment, and that evidence of their alleged prior conduct was admitted solely for the purpose of characterizing their conduct within the said county, so that it cannot be said that the danger which might otherwise have existed of a verdict being returned finding them guilty of offenses committed elsewhere was not fully guarded against by the court.

Finding no error the judgment of the Appellate Court is affirmed.                          *Judgment affirmed.*