## Elias Lyman v. The People, etc.

1. ADULTERY—*Indictment for Living Together in an Open State of.*
—An indictment against two persons, E. L. and A., jointly, for living together in an open state of adultery, charging that the defendants, E. L. and A., not being then and there married to each other, unlawfully etc., did live, cohabit and have carnal intercourse together in an open state of adultery, he, the said E. L., then and there being a married man, having a lawful wife other than the said A. living, as he, the said E. L., and she, the said A., well knew, contrary, etc., sufficiently states the offense against E. L. under the statute.

2. SAME—*The Offense Defined.*—Adultery is the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife, whether the latter is married or single.

3. SAME—*Separate Trials for Persons Indicted for Living in an Open State of.*—Where two persons are indicted jointly for living together in an open state of adultery, it is not essential that both of them be tried together, or for that matter, that both of them be tried at all; as the fact that one of them escapes or dies, does not prevent the trial from proceeding against the other.

4. MARRIAGE—*Sufficiency of the Proof of, in Prosecutions for Living in an Open State of Adultery.*—Where an indictment against two persons for living together in an open state of adultery alleges that one of the indicted parties is married, proof by an eye-witness that on a certain day, at a certain place, a marriage ceremony between such person and a woman was performed by a minister, in which they stood up before the minister and joined hands as he requested, and he asked the man if he took the woman to be his lawful wife, to love, protect and cherish her, and to care for her in health and sickness, to which he responded in the affirmative, and to like questions put by the minister to the woman she made like responses, after which the minister pronounced them man and wife, is sufficient proof of a marriage contract *per verba de praesenti*, between the parties.

Indictment, for living in an open state of adultery. Error to the Circuit Court of Henry County; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Mr. Justice HIGBEE dissenting. Opinion filed November 15, 1901.

C. C. WILSON and N. F. ANDERSON, attorneys for plaintiff in error.

EMERY C. GRAVES, State's Attorney for Henry County, attorney for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Elias Lyman and a woman whose first name was Alice, and whose last name was unknown to the grand jury, were jointly indicted for living together in an open state of adultery. Apparently Alice was not apprehended. The proof was, she returned to Chicago when she ceased to live with Lyman. Lyman alone was placed on trial. His motion to quash was overruled as to the first four counts. He pleaded not guilty. A jury found him guilty under the second count. He interposed motions for a new trial and in arrest, which were denied. He was sentenced to imprisonment in the county jail for forty days and to pay the costs. He has sued out this writ of error to review said judgment.

The second count, after laying the venue, charged that said Elias Lyman and the woman named Alice on September 15, 1899, "not then and there being married to each other, unlawfully, wrongfully and willfully, did live, cohabit and have carnal intercourse together in an open state of adultery, he, the said Elias Lyman, then and there being a married man having a lawful wife other than the said Alice living, as he, the said Elias Lyman, and she, the said Alice, then and there well knew, contrary to the form of the statute," etc. It is argued this does not charge Lyman with the crime of living in an open state of adultery, for three reasons: first, because it does not charge that Alice was a married woman; second, because it charges that he had as wife both the other woman and also Alice, and hence it is either uncertain or charges bigamy; and third, because the offense is charged to have been committed on a single day only, without a *continuendo*, and that is legally impossible.

Adultery is the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife, whether the latter is married or single. (Miner v. People, 58 Ill. 59; Bouvier's and Anderson's Law Dictionaries, Titles, "Adultery.") The offense of the married person is adultery, and of the unmarried person fornication.

The second count does not in express terms aver whether Alice was married or single. It does aver that Lyman and Alice were not married to each other; that Lyman had a lawful wife then living; and that Lyman and Alice lived together in an open state of adultery. Alice could not have committed the offense of living in an open state of adultery with Lyman unless she had a lawful husband then living. In Crane v. The People, 168 Ill. 395, the court said, on page 397, that the word "adultery" has a well known meaning which could not be misunderstood by a jury, and it is there implied that it was not necessary to explain in the indictment why the offense was adultery instead of fornication. This indictment charges the offense against Alice in the language of the statute, and it is usually sufficient to state any criminal charge in the language of the statute. But Alice is not on trial and we need not now determine whether she is sufficiently charged with a crime. It is not essential both guilty parties shall be indicted, and if jointly indicted it is not necessary both shall be tried. (Bishop on Statutory Crimes, Sec. 708.) If Lyman committed the crime he could be indicted and punished even if his paramour were dead, so that the indictment could not run against her. It might readily happen that the grand jury could not ascertain nor the prosecution prove whether the guilty woman was married or single. If the indictment averred in one count that she was married and in another that she was single, the prosecutor might be unable to prove which allegation was true; and if the allegation was material as against the married man, the jury could not in such a case convict him under either count. Lyman was guilty of adultery if he had a lawful wife then living, if Alice was not that lawful wife, if Alice and he were not married to each other, and if he and Alice lived, cohabited and had carnal intercourse together in an open state of adultery. All this the indictment charged against him. In 2 McClain's Criminal Law, Sec. 1094, it is said:

"Where the offense may consist in connection between a

married man and a woman not his wife, whether married or single, it is unnecessary to allege the state of the woman in this respect."

We are of opinion the second count was sufficient in this particular as against Lyman.

The argument that the words " he, the said Elias Lyman, then and there being a married man having a lawful wife other than the said Alice living," mean that Alice also was his wife, is not based on what we conceive to be the natural meaning of the words employed, and we think it especially clear such is not their meaning here, when considered in connection with the other words in the same sentence charging said Lyman and said Alice with " not then and there being married to each other."

The offense is laid on a single day in the second count. If Lyman lived with Alice in an open state of adultery for four weeks or longer, as the evidence tends to prove, he was guilty of that offense on each day of the time.   As to the allegation of time, this count follows the precedent given in Cameron's Criminal Law, on page 19.   In 2 McClain's Criminal Law, Sec. 1087, speaking of living in a state of adultery, it is said it is not necessary the relation continue for any definite length of time; that it may be sufficient that it is for a day only, if it is with an intention of continuance. We are of opinion the court did not err in overruling the motion to quash the second count.

It is argued there is no sufficient proof that Lyman was legally married.   There is proof by an eye-witness that on December 14, 1858, at Rochester, Vt., a marriage ceremony between Lyman and a woman was performed by Rev. Mr. Tracy, a Congregationalist minister of that place; that Lyman and the woman stood up; that the minister stood in front of them; that they joined hands when the minister requested them to do so; that the minister employed the marriage service used by the Congregationalists; that the minister asked Lyman if he took her to be his lawful wife, to love, protect and cherish her, and care for her in health and sickness; that Lyman responded in the affirmative;

that the minister put like questions to the woman, and she
made like responses; that when the minister came to the
close of the ceremony he pronounced them man and wife;
that thereafter Lyman lived with said woman as his wife in
Kewanee many years, and they raised a family of children,
and that she still lives there in the same house where they
formerly lived together. We think this was sufficient
proof of a marriage contract *per verba de praesenti* between
those parties (Hiler v. The People, 156 Ill. 511), and that it
was not necessary to prove that the clergyman had been
ordained, nor that the laws of Vermont authorize a clergy-
man to solemnize marriage. There was other proof having
some bearing on the question. Several witnesses testified
that they knew Lyman's wife. She was repeatedly spoken
of in the testimony as Mrs. Elias Lyman and Mrs. Lyman.
Defendant's counsel asked a witness if she had not fre-
quently talked over the marriage ceremony with Mrs.
Lyman. Several witnesses had heard defendant speak of
and to her as his wife. Adelaide Lyman was sworn as a wit-
ness for the prosecution. Defendant's counsel objected,
and said to the court, "The objection is that she is the
defendant's wife." The objection was afterward with-
drawn. Several of these matters do not appear in the
abstract. We think the proof in this respect sufficient.

It is argued the proof does not establish that Lyman and
Alice lived in an open state of adultery together. At this
time Lyman had left the home in Kewanee where he and
his wife had lived together, and where she still lived, and
was now living on one of his farms. Alice lived with him
a total of four weeks or longer, going away once and
returning. She went upstairs to bed at night with Lyman.
The only places where she could sleep were two bedrooms.
One had only a cot in it, and was occupied by a colored
woman alone. The other was Lyman's bedroom. Lyman
and Alice were seen going into it together at bed time, and
were frequently heard talking in it after retiring for the
night. At one time they were seen in bed together in their
night clothing. At another time they were seen by another

Lyman v. The People.

witness in the act of sexual intercourse in the same bed. Articles of woman's clothing were seen in his room, which she afterward wore. He was seen to embrace her upon the porch of his farm house. He drove into town nearly every day, and always took her with him. They attended the county fair together. He bought clothing and a diamond ring for her and had it charged to him, and put the ring upon her finger. When she had a dress skirt fitted she went into the parlor of the dressmaker's establishment and showed it to Lyman, to see if it pleased him. He said it did, and that she had nice hips. He had the skirt charged to him. · He introduced her as Mrs. Lyman, and as his wife to several people. The only proof introduced for defendant was to the effect that he was insane, and that his insanity took the direction of lewdness and sexual extravagance. After this had all been heard, and evidence in rebuttal on that subject, defendant withdrew the evidence offered as to his insanity. The proof for the prosecution was made up of many details testified to by numerous witnesses. None of this testimony was contradicted by any witness. The conclusion from all the facts is irresistible that Lyman and Alice lived together openly as husband and wife, lived together, occupied the same room and bed at night, rode about the country together, and generally followed the course of conduct toward each other which husband and wife are accustomed to, for about four weeks. No one was deceived into thinking they were husband and wife, for those whom they met knew Lyman had a wife, the mother of his children, living in Kewanee. But it was not necessary to the crime that the public should believe they were husband and wife. In our judgment the evidence required the jury to find that they lived together in an open state of adultery.

Complaint is made that the instructions given at the request of the prosecution did not define the word "adultery." This is answered by what is said in Crane v. The People, *supra*. Some of defendant's refused instructions wholly misstated the law. Others were not based upon any

evidence, such as those which referred to "occasional vis-
its" between Lyman and Alice. There was no proof of
occasional visits. If any of the refused instructions might
have been given, still their refusal did defendant no harm.
The fact of his guilt was clearly proven, and the only
defense he attempted he afterward withdrew. No fact tes-
tified to by any witness for the people was controverted by
any other witness. The jury could not have returned any
other verdict. The judgment is affirmed.

HIGBEE, J., dissenting.

I am of opinion the count upon which Lyman was
convicted failed to charge, with sufficient clearness, the
offense contemplated by section 11 of the criminal code,
under which the indictment was found. That section
(Hurd's Stat. 1899, p. 563) provides:

"If any man and woman shall live together in an open
state of adultery or fornication, or adultery *and* fornica-
tion, every such person shall be fined," etc.

In construing the statute it is necessary to bear in mind
that three distinct offenses are recognized by it: one, living
in an open state of adultery; another, living in an open
state of fornication; and the third, living in an open state
of adultery and fornication. The statute does not define
adultery or fornication, but the manner in which these
terms are used in the section above named indicates
beyond question an intention to make a distinction between
them. In the case of Miner v. The People, 58 Ill. 59, it is
said:

"Adultery is criminal intercourse between a married
person and one of the opposite sex, whether married or
single."

It is to be observed, however, in that case the indictment
was apparently against the man alone, and in order to cover
contingencies, there were two counts, one charging adultery
and the other fornication. The defendant there was found
guilty of adultery, and among the reasons given by the
Supreme Court for reversing the case, was the one that the

evidence of the marriage of the woman was wholly insufficient.

In the case of Crane v. The People, 65 Ill. App. 492, where there was an indictment under the statute in question here, it was said:

"The well known meaning of the word adultery is the illicit sexual connections of a man and woman who are not married to each other, and each of whom has a living husband or wife at the time, and the jury could easily understand that from the language of the statute."

This case was affirmed on appeal by the Supreme Court in Crane v. The People, 168 Ill. 395, where the following language is used in the opinion:

"The word adultery has a well known meaning, and could not, at least, as used in this indictment, have been misunderstood by the jury; * * * and if it were necessary to explain in the indictment why it was adultery, the indictment did so by alleging that Crane was then and there a married man, having been previously married to one Jessie E. Doolittle, and that Mrs. Stiles was then and there a married woman, having been previously married to one Everell D. Stiles."

It might, therefore, well be inferred from the above cases that to sustain the charge of adultery under this statute it would be necessary to prove that both the persons were married, the one having a wife and the other a husband living. I regard it, however, as immaterial which of the definitions of adultery above referred to is technically correct as applied to this statute. Had Lyman been indicted alone, it may be that the allegation that he was a married man, having a lawful wife other than the said Alice living, would be sufficient to charge him with adultery, even in the absence of any allegation as to whether the woman was married or single. But, when the indictment is a joint one against the man and woman, I am of opinion that by the language of the statute, "If any man and woman shall live together in an open state of adultery" is meant, that to constitute the offense both must be guilty of adultery—that is, that both must be married; by living in an open state of fornication is meant that both must be unmarried,

and by living in an open state of adultery and fornication is
meant that one must be married and the other unmarried.
No other construction of the statute could make it reason-
able and give effect to all its parts.

This indictment was a joint one against Lyman and the
woman designated as "Alice." It charges them with liv-
ing together in an open state of adultery; and while it states
that Lyman was a married man having a lawful wife other
than the said Alice living, it wholly fails to state whether
Alice was married or unmarried. The language of the
indictment must be strictly construed, and if it be taken
most strongly against the State we must assume that the
charge as to Alice is that she was unmarried and therefore
could not have been guilty of adultery. The charge against
them, therefore, should have been that of living together in
"an open state of adultery and fornication." As the facts
set out in the second count of the indictment do not con-
stitute the offense of adultery, with which the two defend-
ants are charged, I think it should have been quashed.