**People of the State of Illinois, Defendant in Error, v. Chester Armstrong, Plaintiff in Error.**

**Gen. No. 50,939.**

**First District, Third Division.**

**February 2, 1967.**

Theodore Richter, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Morton E. Friedman, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

After a trial without a jury, defendant was convicted of aggravated incest [1] and sentenced to the penitentiary for a term of three to ten years. He contends that he was not proved guilty beyond a reasonable doubt, that various rulings by the court as to the admissibility of evidence were erroneous, and that he was unduly restricted in the cross-examination of certain witnesses. The facts follow.

Defendant was indicted for having intercourse with his 12-year-old daughter Emily on February 7, 1963. The matter was brought to the attention of the police on Tuesday, February 20, 1963, by Rosie Lee Armstrong, the wife of the defendant and mother of the complaining witness, and the police questioned Emily about the incident on the same day. Rosie Lee testified that following the police questioning, Emily revealed to her that defendant kept a supply of prophylactics in an unused kitchen cabinet over the grocery pantry; that she (Rosie Lee) had not discovered the presence of these prophylactics and that she took them to the State's Attorney's office the following day and showed them to Police Officer James Jack. She stated that she had asked the defendant to use a contraceptive when engaging in sexual relations with her, but that he had always refused.

---

[1] Ill Rev Stats, ch 38, § 11–10 (1963).

"Aggravated Incest.] (a) Any male person who shall perform any of the following acts with a person he knows is his daughter commits aggravated incest:

"(1) Has sexual intercourse; or

"(2) An act of deviate sexual conduct."

On cross-examination, she said that while her husband was in jail, she received ADC payments. Counsel for defendant then asserted that as long as defendant remained in jail, such payments would continue. The State's Attorney objected to that question as argumentative and the objection was sustained.

Emily testified that she had sexual intercourse with her father on February 7, 1963. Over objection of defense counsel, she stated that she had been forced to submit to him for a period of more than 3 years; that in this time she had intercourse with him on an average of twice a week; and that she never told her mother about it because defendant had threatened to kill her. She testified that defendant first molested her sexually in December, 1959, when "he stuck a spoon into my privates," that she bled; that the defendant took her to the hospital and forced her to tell the police detectives, hospital authorities and her mother that she had been attacked by school boys; and that after she returned home from the hospital, defendant began to have sexual relations with her on a regular basis. During the course of her testimony, Emily described the first act of intercourse with her father and his use of a prophylactic as follows:

"Q. And what, if anything, happened between yourself and your father in December, 1959, at your . . .

"A. He asked me to come into his bedroom. He said he wanted me to do him a favor.

"Q. Mr. Malek: So what did you do?

"A. He told me to pull my skirt and slip off and lay down on the bed, and he unzipped his pants and pulled out his penis.

"Q. And what, if anything, did your father do with his penis?

81

"A. He put on something white, and then he laid down on the bed and stuck his penis into my privates.

"Q. Now, this something white, would you describe it, please, if you can?

"A. It came in a small gold package, and it had Silvertex on the cover of the box, and when he took one out and it was white, it seemed like paper—felt—seemed like it was rubber."

Emily also testified that she and the defendant assumed various positions while engaged in intercourse, and she described them in detail.

Emily was asked whether anyone had seen defendant engage in sexual relations with her, and she testified over the objection of defense counsel that during one act of intercourse she had seen her sister Shirley "peeping through the crack of a door." On cross-examination Emily stated that both Shirley and another sister, Jacqueline, had told her that they witnessed acts of intercourse involving Emily and the defendant. Defense counsel moved that this testimony be stricken, and the court ruled that the testimony as to Jacqueline was inadmissible, but as to Shirley, it might stand.

Dr. Janina Yoksha testified on behalf of the State that she had examined Emily on February 21, 1963, and that she found the girl's hymen to be "distendable and irregular," and that she interpreted this as meaning that the girl had experienced "several intercourse relations."

Officer James Jack of the Chicago Police Department Homicide and Sex Detail testified that he was assigned to the case on February 20, 1963; that he went to the Armstrong home the following day to investigate the matter; that Rosie Lee showed him the package of prophylactics, and that he subsequently placed the defendant under arrest.

Defendant testified on his own behalf, denying that he had ever engaged in sexual relations with his daughter or that he had molested or threatened her. He admitted purchasing the prophylactics, but corroborated his wife's testimony that he had never used a contraceptive with her. He stated that his wife had had him arrested previously, "just like she did this time." Upon cross-examination it was ascertained that defendant had discharged a gun in the home and shot his daughter Shirley in the foot. He claimed that the shooting was accidental, but admitted that Emily was aware he possessed a firearm.

Regarding the incident alleged to have occurred in December, 1959, defendant maintained that his daughter had come home from school bleeding and had told him that she had been raped by two boys on her way home from school.

█ Defendant contends that he was not proved guilty beyond a reasonable doubt, arguing that where a conviction for sexual misconduct is based solely on the testimony of the complaining witness, who is a child, and the defendant denies the charge, the testimony of that witness must be clear and convincing or must be corroborated by other substantial evidence. The cases relied upon by defendant support the proposition he has advanced. People v. Kolden, 25 Ill2d 327, 185 NE2d 170; People v. Parker, 15 Ill2d 508, 155 NE2d 588; People v. Martin, 380 Ill 328, 44 NE2d 49. These decisions, however, are distinguishable from the instant case. In People v. Kolden, supra, a conviction for indecent liberties with a child was reversed where the prosecuting witness, a 9-year-old girl, testified on cross-examination that she did not know what "privates" meant; did not know where the defendant put his finger; and that she had merely repeated on the witness stand what had been told to her. In People v. Parker, supra, a case also involving a con-

viction for indecent liberties, the court reversed the judgment because the facts related by the prosecutrix were not borne out by the medical evidence and "could not be an accurate recital of the story." In People v. Martin, supra, the prosecuting witness, who was 6 years old, was the only witness to testify to the alleged offense, and the conviction was reversed on the basis of insubstantial identification of the defendant, whom the girl did not recognize until coached by her mother.

In the instant case, the trial judge was impressed by the testimony of the prosecuting witness and based his finding on her narration. This testimony appears to us to be lucid and credible insofar as her description of the sexual relations with her father are concerned. We conclude that the evidence overwhelmingly supports the trial court's finding, and it is therefore not necessary to examine the evidence offered in corroboration by the State. We note, however, that the testimony of both Rosie Lee and the defendant with respect to the prophylactics and that of Dr. Yoksha as to Emily's physical condition constitute substantial independent corroboration, as defined in People v. Pazell, 399 Ill 462, 78 NE2d 212.

Defendant's second contention is that it was error for the court to allow the complaining witness to testify to prior sexual relations between herself and defendant. It is the law in Illinois that in cases involving sexual relations, evidence of prior offenses between the defendant and the complaining witness is admissible for the purpose of showing the relation of the parties and to corroborate the testimony of the complaining witness concerning the particular act. People v. Crane, 168 Ill 395, 48 NE 54; People v. Gray, 251 Ill 431, 96 NE 268; People v. Kraus, 395 Ill 233, 69 NE2d 885. This principle was declared applicable specifically to cases involving incest. People v. Turner, 260 Ill 84, 102 NE 1036.

■ In People v. Turner, supra, objection to such evidence was also made on the ground that the former conduct occurred beyond the statutory period in which the defendant could have been tried for such offense. The court observed that the purpose of this testimony was not to secure a conviction for former acts, but to show their relationship to the offense for which the defendant was tried. The court in the instant case did not err in permitting Emily to testify to the acts of incest and other sexual misconduct occurring over the three and one-half year period prior to defendant's arrest.

■ Defendant argues that the testimony of the complaining witness concerning her sisters Shirley and Jacqueline was inadmissible and that the court relied on that evidence in making its determination. This contention is without merit. Emily testified that during one act of intercourse with defendant, she observed Shirley watching them through a hole in the door. Insofar as she was testifying as to what she saw, this testimony was admissible. With respect to Jacqueline, Emily testified to a conversation Jacqueline had with her, and the court properly ruled that this testimony was inadmissible and ordered it stricken from the record. The remarks made by the judge at the time he pronounced judgment are incorporated in the record and indicate that he based his finding on the testimony dealing with the sexual relations between defendant and Emily, and not on that portion of the testimony held to be inadmissible. It is well settled that where a judge sits without a jury, he is presumed to consider only competent evidence, and error cannot be predicated on the improper admission of evidence, absent a showing that this evidence influenced the decision. People v. Robinson, 30 Ill2d 437, 197 NE2d 45; People v. Alexander, 21 Ill2d 347, 172 NE2d 785. In the present case it is clear that the trial judge was not influenced by improper evidence.

■ ■ Defendant alleges that it was error to sustain an objection by the prosecutor to a question asked Rosie Lee, the intent of which was to show bias on her part by demonstrating that she had had defendant arrested before. This evidence was admissible, and it was error to sustain the State's Attorney's objection to its introduction. The matter was fully examined, however, on the direct and cross-examination of the defendant, and he was not prejudiced by the exclusion of evidence which was in fact admitted at another point in the trial. People v. Speice, 23 Ill2d 40, 177 NE2d 233; People v. Moretti, 6 Ill2d 494, 129 NE2d 709.

■ Defendant asserts a similar claim with respect to the limitation of certain questioning also intended to prove that his wife was biased. The testimony here in question dealt with defendant's relationship with another woman and was objected to *by defendant*. He now contends that Rosie Lee should have been permitted to complete her testimony. The defendant cannot take advantage of an error induced by his own motion. People v. Musinski, 22 Ill2d 518, 177 NE2d 142; People v. Clements, 316 Ill 282, 147 NE 99. We need not therefore consider whether this line of questioning was proper.

■ ■ Defendant argues that the court improperly limited his cross-examination of Rosie Lee with respect to payments she received for the support of her family while defendant was in jail and thus had an interest in keeping him there. As we have hereinbefore pointed out, defense counsel had established that Rosie Lee was receiving ADC payments, and the court merely sustained objection to the argumentative form of the statement by defense counsel, which did not seek to elicit any new information. Counsel did not attempt to rephrase the question, but abandoned the line of questioning. The latitude permitted on cross-examination to show bias is within the discretion of the trial court. People

v. Moretti, supra; People v. Derrico, 409 Ill 453, 100 NE2d 607. The trial court did not err in his ruling.

Defendant has had a fair trial, his guilt was established beyond a reasonable doubt, and the judgment must be affirmed.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.