**People of the State of Illinois, Plaintiff-Appellee, v. Ned Wilder,. Defendant-Appellant.**

**Gen. No. 53,472.**

First District, First Division.

January 19, 1970.

Robert S. Bailey and Arthur E. Engelland, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John McClory, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial, defendant was found guilty of the offense of aggravated incest, in that he knowingly had sexual intercourse with his 13-year-old stepdaughter in violation of chapter 38, § 11–10(b), Ill Rev Stats. He was sentenced to the penitentiary for a term of four to eight years.

On appeal defendant asserts prejudicial trial errors in that the trial court (1) improperly restricted the cross-examination of defendant's wife and mother of the victim, who testified as a State's witness, and (2) permitted the State to argue after both sides had waived argument and reopened the proofs, after both sides had rested, to permit one of the State's witnesses to testify as a court's witness.

At the trial the prosecutrix, defendant's stepdaughter, testified that sometime during the early morning hours of February 1, 1967, she was awakened by defendant

standing over her, naked and with a knife in his hand. Her brother Donnie, aged 12, shared her bedroom, and he was awake at the time defendant entered the room. The prosecutrix related in detail defendant's act of sexual intercourse with her, the tearing of her pajamas, the washing out of a bloody sheet, and the giving to her of $10, admonishing her not to tell anyone. He also gave a dollar to Donnie and admonished him to remain silent. The prosecutrix then dressed and with Donnie went to a neighbor's apartment (Mrs. Wheeler), who telephoned the witness's mother, who was visiting in Birmingham, Alabama, and then called the police. The prosecutrix was then taken to Billings Hospital, where she was examined by a doctor.

The testimony of the prosecutrix was substantially corroborated by her brother Donnie and Patricia Wheeler and Alice Walker, neighbors who lived in the building. Patricia Wheeler lived on the first floor, and the Wilders lived on the third floor. Patricia Wheeler testified that the prosecutrix came to her apartment with Donnie in the early morning of February 1, 1967, appearing very upset. After having a conversation with the prosecutrix and Donnie, she called Edith Wilder in Birmingham, Alabama. The prosecutrix spoke with her mother, and after that conversation Patricia Wheeler called the police. Alice Walker also arrived at her apartment, and she left with the Johnson children and the police.

Alice Walker, as a State's witness, testified that in the early morning of February 1, 1967, she received a telephone call from Mrs. Wilder at approximately 1:45 a. m., from Birmingham, Alabama. She began a conversation with Mrs. Wilder, stopped, and went downstairs to Mrs. Wheeler's apartment. She brought the prosecutrix back upstairs to her apartment and terminated the call. Later the police came to her apartment, and she went with the police and the prosecutrix to Billings Hospital, where a doctor examined the prosecutrix. On the way to the

hospital the prosecutrix gave her a ten dollar bill, which she gave to Officer Downey.

Edith Wilder, defendant's wife, testified for the State. On January 31 and February 1, 1967, she was in Birmingham, Alabama, with her mother and was on friendly terms with defendant before she left. She received a telephone call early in the morning from her daughter, the prosecutrix. After terminating that conversation, she called Alice Walker, who lived on the third floor. On February 1, 1967, her daughter, the prosecutrix, was 13 years old.

Police Officer John Downey testified he was assigned to investigate the occurrence. He went to Billings Hospital and talked with the prosecutrix and Alice Walker, who gave him a ten dollar bill, which he marked. After going to the hospital, he went to 1140 East 64th Street, where he went to the third floor with another police officer, the prosecutrix and Mrs. Walker. He entered the apartment and observed a knife lying on a table inside the door. Hearing a noise in the rear of the apartment, he found the defendant, Ned Wilder, cooking in the kitchen. The prosecutrix identified the defendant, and Officer Downey arrested him.

The court received into evidence as State's exhibits the knife, the torn pajamas of the prosecutrix, a bed sheet and the ten dollar bill. It was stipulated that the Chicago Crime Laboratory had examined the sheet and pajamas, and that both contained dry human blood and spermatozoa. It was also stipulated that Dr. Merrick would testify that on February 1, 1967, he conducted a vaginal examination of the prosecutrix, and that various chemical tests indicated that human spermatozoa was on the swab. The State then rested its case in chief.

Defendant testified and recounted his whereabouts during the entire night of January 31 and February 1, 1967. He had sexual relations with two different women. He left the first one about 10:30 p. m. and was in the

company of the other from 11:30 until about 1:30 a. m. He further said that he was home at 5:00 a. m. on February 1, 1967, and that he was home earlier on that night. Defendant's account of his whereabouts was supported by the direct testimony of Anna Britton and by a stipulation as to the testimony of Susie Addison to the effect that defendant left her home at approximately 1:30 a. m. on February 1, 1967.

In rebuttal, Edith Wilder and Officer John Tully testified for the State. Edith Wilder testified that at 11:30 p. m. on the night in question she received a telephone call in Birmingham, Alabama, from defendant, who told her he was at home. At 1:30 a. m. she received a call from her daughter. Later she called defendant, who answered the telephone, and she asked him what he had done. He said nothing. He also told her that Rendella and Donnie were not in the house. Later on that evening defendant called her again and asked what happened, and she told him nothing. Ten or fifteen minutes after that she had a telephone call from Mrs. Wheeler and talked to a detective. After the incident she separated from the defendant.

Officer Tully testified that he was the first police officer on the scene, and that after his arrival and prior to taking the prosecutrix and Mrs. Walker to Billings Hospital, he searched defendant's apartment. He found no knife, no sheet, no torn pajamas. All he found was one small boy sleeping, and defendant was not present at that time.

At the conclusion of Officer Tully's testimony both sides rested and waived final argument. Then the State was permitted, over defendant's objection, to argue. Defendant's counsel also argued at the time. Thereafter, and following an extended colloquy, the trial court, over the objection of the defendant, reopened the case and examined Officer Tully as a court's witness. Officer Tully stated that he did not look for evidence in search-

ing the apartment, only for the offender. After examining Officer Tully, the court remarked: "Well, that was the only point that disturbed the Court. I can't hold it against the State because the officer didn't operate as I thought perhaps one would have operated under those circumstances, but I think the evidence is overwhelming. There is no dispute, too, that there was sexual intercourse. There was all the evidence as to that. There will be a finding of guilty."

Considered first is defendant's contention that the court erred in restricting the cross-examination of defendant's wife when she testified in rebuttal. Counsel for defendant opened the cross-examination with the question, "Mrs. Wilder, you lied before on the stand haven't you?" The State's objection was sustained, and after further attempts to impeach the credibility of this witness by showing that she had previously lied on the witness stand in stating that defendant, Ned Wilder, had stabbed her son, the cross-examination was concluded.

Defendant argues it is difficult to postulate more impeaching evidence than the fact that a witness had previously lied under oath in a criminal case against the very defendant now on trial—that was what defendant Wilder attempted to prove, and the trial judge did not permit it. Defendant's authorities include Pointer v. Texas, 380 US 400 (1965); Smith v. Illinois, 390 US 129 (1968); and People v. Armstrong, 80 Ill App2d 77, 224 NE2d 675 (1967). In Pointer v. Texas, it is said (p 403):

"We hold today that the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment.

"It cannot seriously be doubted at this late date that the right of cross-examination is included in the

427

right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case. . . . The fact that this right appears in the Sixth Amendment of our Bill of Rights reflects the belief of the Framers of those liberties and safeguards that confrontation was a fundamental right essential to a fair trial in a criminal prosecution."

The State argues that a proper foundation must be laid to impeach a witness for bias, and that this was not done here. Also, "the question, as asked, did not imply any search for bias, nor for any prior inconsistent statement related to this cause." Citations include People v. Rainford, 58 Ill App2d 312, 320, 208 NE2d 314 (1965), and People v. Payton, 72 Ill App2d 240, 248, 218 NE2d 518 (1966).

 We find no merit in defendant's instant contention. The defendant in a criminal prosecution should be permitted the widest latitude in the cross-examination of the State's witnesses for the purpose of establishing bias, particularly in a sex case. (People v. Naujokas, 25 Ill2d 32, 37, 182 NE2d 700 (1962).) The question propounded to Mrs. Wilder failed to include any details as to time, place or circumstances. The defendant made no attempt to lay a foundation after the State's objection was sustained. Defendant had the opportunity to rephrase his question or to make it more definite, and his attorney chose not to do so. The limitation of cross-examination is a matter which is ordinarily left to the sound discretion of the trial judge, and the exercise thereof will be sustained in the absence of a clear showing of abuse, which we fail to find here. People v. Caldwell, 62 Ill App2d 279, 284, 210 NE2d 556 (1965).

428

Defendant's next contention is that the trial court erred in permitting the State to argue in rebuttal and reopen the evidence after defendant had waived argument. Defendant argues that his waiver of argument left nothing for the State to rebut, and that permitting the prosecutor to argue over the objection of defendant's counsel "destroyed the balance of the trial and represented a departure from the accepted norms of criminal procedure which could only have severely prejudiced Defendant's case."

Defendant further argues that recalling Officer Tully to the stand, to testify as to why he found no evidence of the crime when he arrived on the scene, was prejudicial error. Defendant notes that the trial judge "entertained serious doubts concerning the sufficiency of the evidence to convince [him] of the guilt of defendant," and that reopening the evidence to allow Officer Tully to testify that he did not search for evidence "operated distinctly to the disadvantage of the Defendant and was not warranted by the dictates of fairness and justice." Authorities cited include Cunningham v. People, 210 Ill 410, 71 NE 389 (1904) ; People v. Franceschini, 20 Ill2d 126, 169 NE2d 244 (1960) ; and People v. Crump, 5 Ill2d 251, 125 NE2d 615 (1955).

In Cunningham v. People, defense counsel waived argument after the State had concluded its summation to the jury. A second Assistant State's Attorney insisted on the right to argue in rebuttal without regard to defendant's waiver, and the trial court allowed him to resume argument. The Illinois Supreme Court held (p 418) :

"When the attorney for the People closed the opening argument, the attorney for the defendant had the right to waive the argument to the jury upon behalf of the defendant if he saw fit so to do, and if he did waive defendant's right to have the case

429

argued to the jury, the People did not have the right to further argue the case to the jury."

In People v. Franceschini, the court stated (pp 131–132):

"As a general proposition it is never improper for a judge to aid in bringing out the truth in a fair and impartial manner. In People v. Lurie, 276 Ill 630, 641, this court observed that 'It is the judge's duty to see that justice is done, and where justice is liable to fail because a certain fact has not been developed or a certain line of inquiry has not been pursued it is his duty to interpose and either by suggestions to counsel or an examination conducted by himself avoid the miscarriage of justice, but in so doing he must not forget the function of the judge and assume that of the advocate.' "

In People v. Crump, the court stated (p 267):

"It is a general rule that a witness should not be called by the court as a court's witness unless it is shown that otherwise there may be a miscarriage of justice or the requesting party, for a reason about which he informs the court, doubts the integrity or veracity of the witness."

██ ██ After examining this record we find that no prejudicial error was committed by the court in allowing the State to argue in rebuttal after defendant had waived his argument. The record shows that defense counsel was also permitted to argue and did so. Also, we find that it was within the sound discretion of the court to reopen the evidence and to recall Officer Tully to the stand. Apparently the trial judge was concerned over Officer Tully's prior testimony that he did not search defendant's apartment. We believe that both of these contentions come within the guidelines set forth in People

v. Cross, 40 Ill2d 85, 237 NE2d 437 (1968), where it is said (p 90):

"It is in the sound discretion of the trial court whether a case may be opened for further evidence and this discretion will not be interfered with except where it is clearly abused."

 We conclude that the evidence established defendant's guilt beyond a reasonable doubt, and that he received a fair trial, free from prejudicial error. The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.