The People of the State of Illinois, Plaintiff-Appellee, *v.* Gregory Kim Stutzel, Defendant-Appellant.

(No. 72-143;

Second District—August 9, 1973.

Jay B. Ross and Jeffry T. Mandell, both of Chicago, and Jay S. Judge and Thomas W. Hunter, both of Park Ridge, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

A bench trial resulted in defendant being found guilty of the unlawful sale of a drug. (Ill. Rev. Stat. 1969, ch. 111½, sec. 802(b).) Granted probation, he was to serve the first ninety days in the County Jail. Defendant claims that the actions of a police informant constituted entrapment. Two sub-issues are raised: (1) the court erred in refusing to continue the case in order that a co-defendant could testify without incriminating himself, and (2) the State should have been compelled to produce the informant.

John J. Zandey, a narcotics inspector for the Illinois Bureau of Investigation (I.B.I.) testified that on May 19, 1971 he was told by an agent of the Wisconsin Department of Justice that an informant, Mark Mesher (also known as Shad), had arranged for the purchase of 25,000 tablets of "speed"; that Zandey agreed to meet with Shad that evening; that at 8:00 P.M. Zandey, accompanied by another I.B.I. agent, proceeded to the prearranged meeting place; that they met Shad who introduced them to Dennis Williams and Richard Armstrong, co-defendants herein; that Armstrong stated he had not made his connection but that it would take place at 10:30; that, at 10:30 P.M. the agents again met Shad, Williams and Armstrong and were told to come back at 11:30; at 11:30 they were told to come back at 11:45; that the agents exhibited some impatience during the evening because of the delays; that upon returning at 11:55 P.M., defendant arrived and sold the agents a bag containing 25,000 tablets of amphetamine.

The defendant testified that he had known Richard Armstrong for six months prior to May 18, 1971; that in the evening of May 18 he received

a phone call from Armstrong who asked defendant if he could obtain 25,000 tablets of speed, to which he replied he didn't want to, didn't know if he could, but would try; that Armstrong responded that he would call defendant the following night. Defendant stated that he did not attempt to obtain the drugs; that the next morning Armstrong called and said that his friend, Shad, had already gone ahead with the arrangements, and that two men affiliated with the syndicate were coming from Detroit. Defendant informed Armstrong that "for sure" he didn't want "to do it"; to which Armstrong replied that they were already on the way and defendant "couldn't get out of it." Defendant then went to a college campus to look for Joe (a man purported to be involved with drugs), "ran into" Armstrong and was again told that Shad had set it up and that two people were coming down from Detroit. Contacting Joe, defendant explained the situation; Joe said he would try to help and would call defendant later that day. Continuing his testimony, defendant stated that at 8:00 P.M. Armstrong called saying he was with the two men from Detroit who were angered because "it wasn't to go," that they had displayed a gun and said "everything better go right this time otherwise they would be back down;" that he again told Armstrong he "definitely didn't want to do it" but was advised that his life might be in danger if he didn't go through with it; that he told Armstrong he would have to wait until Joe called; that Joe called, said he could obtain the drugs but that it would take 3 or 4 hours because the drugs were being brought from southern Illinois; that at 10:30 Armstrong called again, at 11:00 P.M., the drugs were delivered and defendant subsequently brought them to the I.B.I. agents who talked about the "boss in Detroit" and used the expression "key man." Defendant was then arrested. He maintained that he had never sold drugs before and that he had not known Shad or Dennis Williams prior to May 19, 1971.

Dennis Williams, who earlier pleaded guilty, testified that he had not known defendant prior to May 19, 1971, had known Richard Armstrong since high school, had met Shad in college and was a partner with him in the sale of drugs; that Shad had told him he could obtain money from the syndicate for the purchase of speed; that he and Shad went to Armstrong's house on May 18, 1971, and inquired as to whether he could obtain speed; that Armstrong responded that he was not sure but might be able to help; that on the evening of May 19, one of the I.B.I. agents displayed a gun and said "this thing better go because we might have to come back if you guys mess this up"; that the agents "got kind of hostile" when the drugs did not initially arrive.

John Zandey was recalled as a witness and denied showing a gun to

Williams, Shad or Armstrong and denied stating that they would be back if everything didn't go right.

A major portion of the evidence introduced as a defense was founded upon hearsay. It was allowed to stand over objection with the court's understanding that testimony of other defense witnesses would serve to connect such evidence. This was not done. At the conclusion of trial, the court found no credence in defendant's attempt to establish entrapment, and stated "I have no choice but to find him guilty \* \* \* I can't see where he was coerced or forced into selling it because of the syndicate, I think this is hog wash and I think he is as guilty as a young man can be \* \* \*."

The defense of entrapment has been defined by our supreme court in *People v. Dollen*, 53 Ill.2d 280, 283, (1972). In part the definition is:

> " '\* \* \* [W]here it appears that officers of the law or their agents have conceived and planned a criminal offense and have incited, induced, instigated, or lured the accused into committing an offense which he would not otherwise have committed and had no intention of committing, entrapment is established and no conviction may be had.' "

Defendant argues that he was entrapped as a matter of law by the informant's representations to Williams and Armstrong that the purchasers were members of a crime syndicate, that failure to complete the transaction would meet with repercussions and that he was not only lured or persuaded, but literally frightened into providing the drugs. He claims this is further bolstered by testimony that he was originally reluctant to provide the drugs.

■■ One of the essential elements of entrapment is that *officers of the law or their agents* have incited, induced, instigated or lured the accused into committing the offense. While defendant's testimony stands almost totally unrebutted, evidence establishing entrapment, as defined, is not present. The record is void of any proof that the police informant Shad (whose activities the police are responsible for, *People v. Dollen, supra* at 284) ever had any direct contact with defendant, ever directly threatened defendant or even knew him. Were we to assume that allegations of syndicate connections and implied threats of repercussions constitute entrapment, such statements in the case at bar came not from the police or their informant-agent, but from defendant's friend Armstrong. We cannot say as a matter of law that the evidence shown herein constitutes entrapment. This is supported by our research of other jurisdictions. *United States v. Emory*, 468 F.2d 1017 (1972); *Thompson v. State*, 290 N.E.2d 724 (S.Ct. Ind. 1972).

■■ Defendant contends that it was error for the State not to produce Shad as a witness, the defense being unable to locate him. He cites cases which hold that once a defendant has presented some evidence to raise the issue of entrapment, the burden of proof is upon the State to rebut this evidence beyond a reasonable doubt. (See *People v. Dollen, supra* at 284.) Also cited are cases where the prosecution should call the informer as a witness to rebut the defense's evidence tending to prove the informer entrapped the defendant; that failure to do so creates an inference against the State. (*People v. Strong,* 21 Ill.2d 320, 325 (1961); *People v. Jones,* 73 Ill.App.2d 55, 58-60 (1966).) These rules of law are applicable when a defendant has presented some evidence raising the issue of entrapment. Having already found the record lacking such evidence, we find the cases inapplicable.

■■ Prior to closing proofs, defense stated:

> "The next witness (Richard Armstrong) has not been tried and his Attorney has advised him not to testify."

The Court responded:

> "I have no right under the law to allow him to testify and I just can't do it * * *."

Counsel then requested a continuance until after Armstrong had been tried. Upon denial of the request, defense rested. Defendant now claims that the court erred in not allowing Armstrong to testify. Except for the representation by defense counsel, the record is silent as to whether Armstrong was present and if present, whether he would refuse to testify. Regardless, the trial court was not empowered to compel Armstrong to testify while he was awaiting trial for an offense arising out of the same transaction for which defendant was being tried.

■■■ Defendant also alleges the court erred in refusing to grant the continuance. The granting of a continuance in a criminal trial is a matter of discretion resting with the trial court and its exercise will not be disturbed unless there has been a manifest abuse of such discretion. (*People v. Kees,* 32 Ill.2d 299, 303, 304 (1965).) We find no such abuse here. Defendant had previous continuances; he made no offer of proof either to the fact that Armstrong would testify or regarding the substance of that testimony. In any event, Armstrong's testimony could only have corroborated defendant's, and we have already held defendant's testimony insufficient to raise an issue of entrapment.

Finding no error we affirm the judgment of the lower court.

Judgment affirmed.

GUILD, P. J., and SWANSON, J., concur.