THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHERMAN ANTHONY KANE, Defendant-Appellant.

(Nos. 57538, 59088 cons.;

First District (5th Division)—August 8, 1975.

Warren D. Wolfson and Glenn E. Gutsche, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Raymond J. Prosser, and Michael T. Reid, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

In a bench trial, defendant was found guilty on charges of possession of heroin and marijuana. On the former, he received a sentence of 7 to 15 years and on the latter 1 to 2 years to run concurrently. On appeal, he contends that (1) the trial court abused its discretion in denying his motion for a continuance when, on the date set for trial, the codefendant, Rose Baker, failed to appear; (2) the court erred in refusing to admit testimony concerning extrajudicial statements of Rose Baker that she was the exclusive possessor of the narcotics in question; (3) proof of guilt beyond a reasonable doubt was lacking because the heroin was not offered in evidence; (4) the court failed to order and consider a presentence investigation or to hold a proper sentencing hearing; (5) his sentence for possession of marijuana is greater than that authorized by statute; and (6) his sentence for possession of heroin is excessive.

State troopers answering a report of an automobile accident found defendant's car in a ditch next to the highway. One trooper observed defendant lying across the driver's seat with white powder on his right hand, and he saw more white powder, as well as pistol cartridges and a shoulder holster, on the floor. Crouching down to talk to defendant, the trooper saw plastic material with white powder on it protruding from a speaker housing next to the steering column. He removed therefrom two plastic bags containing white powder and a third containing two syringes, a needle, and an eyedropper. He could see white through the plastic.

After assisting defendant and his passenger, Rose Baker (hereafter Rose), into an ambulance, the trooper in a further search of the car found a plaid bag on the passenger's side of the rear seat, a tinfoil packet under the steering column, a revolver in the center console, a bag containing 440 one dollar bills, wrapped in bundles of $40 and $50, in the glove compartment, and another plastic bag containing white powder in the speaker console on the passenger's side. The plaid bag contained a bottle labeled "Lactose Merck," a spoon, a roll of plastic and one of tinfoil, plastic bags, a small glass bottle containing a leafy green substance, a plastic bag containing rubber bands, and a woman's purse. The trooper then went to the hospital where, together with a sergeant of the State police, he questioned defendant and Rose.

Defendant and Rose were indicted together for knowingly and unlawfully possessing the narcotics. However, when this case was called for trial, she did not appear. The State declared that it would try defendant and her together "if she shows up," or would try defendant alone and ask for a bond forfeiture and warrant for her if she failed to appear. Defendant's counsel, who was also representing Rose, then said:

"I can't object to a bond forfeiture and warrant, but this rather

embarrasses me in the trial of one defendant without the other being here. Last time she came in at two o'clock. Your honor was kind enough to put it over."

It was then ordered that the charges against Rose be stricken on leave to reinstate, that her bond be forfeited and a warrant issue. At that point, defendant's counsel asked for "a short date in the meantime," to which the court responded:

"No, we are going to trial today on the other defendant. I told you last time, counsel, that we were going to trial. This case has been continued a couple of times and I gave you a firm date."

When the court inquired as to whether defendant desired a bench or a jury trial, his counsel said, "This puts me in an awkward position because * * *." The court then stated:

"* * * You shouldn't be in an awkward position. You knew the trial was set for trial one date. You called me and said I got a problem on that date, asked me to put it over. I put it over. I told you in no uncertain terms, today would be the trial date. You shouldn't feel awkward at all."

In the discussion that followed, defendant's attorney stated:

"I just want a short time to locate her and have her come in here. I am just asking for a week or two until we locate her, if possible."

When it was determined in subsequent colloquy that defense counsel had not seen or heard from Rose since the last time the case was up for trial and the court announced, "We are going to trial today, counsel. Is it a bench or jury?" After a recess, defendant informed the court he desired a bench trial.

At the trial, the trooper testified concerning his observations and actions at the scene of the accident, as set forth above. He stated also that, at the hospital, defendant acknowledged ownership of the gun and money found in the car, but denied knowledge of the contents of the plastic bags and stated the green plaid bag belonged to Rose. Both the trooper and the sergeant testified that they had interrogated her at the hospital; the court, however, sustained objections to defendant's questions to the officers concerning whether she had admitted ownership of the contraband found in defendant's car.

It was stipulated that People's Exhibit No. 7 for identification was heroin weighing in excess of 30 grams and that People's Exhibit No. 16 was marijuana weighing between 10 and 30 grams. Defendant, however, reserved the right to withdraw the stipulation as to the weight of the heroin. The record shows that these and other exhibits were received in evidence.

Defendant testified that he was employed as an electronics technician,

had also worked as an auto mechanic, and helped his father manage some buildings. He was married and had five children. He had seen Rose, who was the girl friend of an acquaintance of his, a few times prior to the accident. He had mentioned to the acquaintance that he and his wife were not on good terms and he was going to take a 2-day vacation to Lake Geneva, and his friend asked him to take Rose to Lake Bluff. On the way, she took a gun from the glove compartment and began playing with it. This caused him to become nervous, and he lost control of the car on a curve. It struck another car, left the highway, and after rolling over came to rest in an upright position. In response to a question as to whether he was conscious when the car stopped, defendant replied, "I was dazed. No, I was dazed." Defendant was then asked, "You were aware of what was going on?", to which he replied, "Well, I don't know. Everything happened so fast and everything. I was daced [*sic*]."

Thereafter, defendant made the following answers on his direct examination concerning a conversation he had with Rose at the time of the accident:

"Q. When the accident took place, did you have a conversation with Rose Baker?

\*   \*   \*

A. Well, it was a one-sided conversation because—Well, it was —Was she told me—She said, 'you had better take this and hide it before the cops come.' And I didn't know what it was, so I just took it.

Q. What did she hand you?

A. I don't know. It was some bags she handed me. She had commenced to taking them out of her purse.

Q. What did you do with them?

A. Well, she said, 'Hide it,' so this is the only thing I knew to do. Really, I didn't know what it was.

Q. Was she excited or calm at that point?

A. She was pretty well excited.

Q. What did you then do, if anything?

A. Well, I tried to hide it. This is what she asked me to do. I tried to hide it.

Q. By hiding it, what did you do?

A. Well, the only place I knew to hide it was in the speaker, you know. That's the only place I knew.

Q. What if anything did she do at that point, if you know?

A. Let's see. If I'm not mistaken, in her AWOL bag, now refering [*sic*] to this bag her [*sic*] (indicating).

Q. You're refering [*sic*] to the green plaid bag?

A. Right. She said, 'Well, try and get all my I.D. out of there,' you know. That was it.

\* \* \*

Q. Did you have any knowledge of the contents of the items given to you by Rose Baker either from the green plaid bag or otherwise?

A. The only thing she had—

Q. The answer is: Yes or no.

A. No. No. No."

At the hospital, defendant testified that he had two conversations with the trooper. The first concerned how the accident happened. As to the second conversation, defendant stated:

"At that time, now he advised me of my rights. And I said, 'Rights about what?' And he told me it was a white powder in the car. \* \* \* I told him I didn't know about it."

Defendant also testified as follows concerning a conversation he claims to have overheard at the hospital between Rose and either the sergeant or the trooper, both of whom were present:

"A. She kept on screaming: 'Well, he didn't know.' She said, 'The poor guy, he didn't know.'

And then she mentioned something about the paraphernalia, you know, about the paraphernalia was hers or something. It was incoherent. I was hearing some and wasn't hearing anything. Sometimes she—

Q. Did you hear Sergeant Jobe ask her any questions about narcotics?

A. Right. I did.

Q. Did you hear the answers she gave Sergeant Jobe?

A. I heard her claim that the paraphernalia was hers."

On cross-examination, defendant testified that the money he kept in the glove compartment was to be used for car repairs, although his car was a current model still under a warranty, and that the additional $1200 found on his person after the accident was for a down payment on some stereo equipment and for his vacation at the Playboy Club in Lake Geneva. He also had a Playboy credit card.

He had no romantic interest in Rose. He attempted to hide the packages she gave him, even though she had caused the accident which wrecked his car and injured him. He did not know what she was giving him. Later he used money given him by her boyfriend to make bail for her at a court in Niles.

When defendant withdrew his stipulation as to the weight of the heroin, a State criminologist testified it weighed a total of 36.33 grams.

After defendant was found guilty on both charges, the court said, "We can proceed in our hearing in aggravation and mitigation." The State's Attorney said, "The State is ready in aggravation." Defendant's counsel said, "I'm ready."

In aggravation, the State pointed out the amount of heroin involved and the lactose (which the record indicates is commonly mixed with heroin), the large sums of money, the revolver and ammunition and the paraphernalia found in the car. It was argued that this evidence indicated defendant was a dealer in, rather than a user of, narcotics. Although defendant had no prior convictions, the State recommended a sentence of 10 to 20 years on the heroin charge and a sentence of 1 to 2 years on the marijuana charge, to be served concurrently.

In mitigation, defendant's counsel presented the following argument:

> "Well, Your Honor, the Court's heard, the man is married, has five children, gainfully employed. Helps his father manage his house.
>
> It's certainly been no showing that he was a dealer. There's still a question in my mind at least as to just what he did possess in the matters found in the car. The car was overturned. There was disarray. Some question as to what the woman owned or had possession of, or what he owned and what he had possession of.
>
> There's no showing that he was a dealer. I don't think there's any crime in carrying money in the glove compartment, in the car, or having $1100 in one's pocket.
>
> I don't think that aggravates the situation. And I certainly think the State's recommendation is highly excessive."

During the hearing, the court also asked defendant if he had anything to say. Defendant made the following statement:

> "Just that everything was covered, and like I said, the lady in the car told everyone that all the paraphernalia was hers. And I have no knowledge of it."

Before pronouncing sentence, the court asked, "Anyone else have anything to say?"—to which there was no response. The court then sentenced defendant to 7 to 15 years' imprisonment on the heroin charge and 1 to 2 years on the marijuana charge, the sentences to run concurrently.

## Opinion

Defendant first contends that the trial court abused its discretion in refusing to grant a continuance when Rose failed to appear. He maintains that had she been available, she would have testified that she was the sole possessor of the narcotics and that, when she failed to appear, he was deprived of the key witness to his planned defense.

Section 114—4(b) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(b)(3)) provides that a defendant's motion for a continuance, made more than 30 days after arraignment, may be granted when:

> "A material witness is unavailable and the defense will be prejudiced by the absence of his testimony; however, this shall not be a ground for continuance if the State will stipulate that the testimony of the witness would be as alleged."

Subparagraph (e) of this section provides that "[a]ll motions for continuance are addressed to the discretion of the trial court * * *." Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e).

■■ It has been held that, unless the defendant affords the State the opportunity to stipulate to the testimony of an absent witness, denial of a motion for continuance is proper. (*People v. Robinson*, 27 Ill.2d 289, 189 N.E.2d 243, *People v. Prochut*, 27 Ill.2d 298, 189 N.E.2d 290.) In *People v. Stutzel*, 13 Ill.App.3d 406, 300 N.E.2d 642, defendant sought a continuance to obtain the testimony of a codefendant. In affirming the denial of the continuance, this court held that there was no abuse of discretion because defendant did not make an offer of proof as to what that testimony would be.

We believe these cases control here. No offer of proof was made as to Rose's testimony, nor did defendant give the State the opportunity to stipulate to her testimony. Neither did counsel inform the trial court verbally or by affidavit how he would be prejudiced by the absence of her testimony or even that she would be a necessary witness in defendant's defense. Accordingly, the trial court did not abuse its discretion under the statute in denying defendant's motion for a continuance.

Defendant's second contention is that the trial court erred in sustaining objections to questions put to the officers concerning the statements he claims Rose made to them. His position, essentially, is that those statements would have corroborated his own testimony that she was the sole owner of the contraband found in his car and that he did not know it was contraband.

■■ This argument assumes that her alleged statements were an admission that she was the owner and possessor of the contraband and thus that they were declarations against her penal interests. Recognizing that such declarations are generally inadmissible as being hearsay (14A Ill. L.&Pr. *Criminal Law* § 402 (1974 Cum. Supp.)), defendant urges that the facts come within an exception to that general rule as set forth in *People v. Lettrich*, 413 Ill. 172, 108 N.E.2d 488 and *Chambers v. Mississippi*, 410 U.S. 284, 35 L.Ed.2d 297, 93 S.Ct. 1038. In both of those cases, the refusal of testimony concerning hearsay third-party confessions was

held to be error. We believe, however, that there are significant differences between the facts of those cases and the instant case which preclude an application here of the exception to the hearsay rule expressed in those cases. The specific aspect of *Lettrich* on which defendant relies was the court's finding that there was no possibility of the third-party declarations having been induced by the defendant. Here, it is claimed that because defendant and Rose were injured in the same accident and were separated in the hospital when she made the alleged admissions, he had no opportunity to persuade her to make them. The record, however, does not support such a conclusion since, by defendant's own testimony, he accepted the contraband from her in the car and acceded to her request that he hide it from the police. Considering the time consumed by this activity, we fail to see any merit to the argument that a false explanation of the ownership of the contraband could not be arranged. Thus, it appears to us that *Lettrich* does not support defendant's position.

In *Chambers*, where defendant was convicted of murder in Mississippi, a third person made, but later repudiated, a written confession of the murder, and on three other occasions the third person orally admitted the killing to three different friends. When the State did not call this third person as a witness, the defendant did, but was not allowed to cross-examine him under a Mississippi rule barring impeachment of one's own witness. Neither was defendant allowed to introduce the testimony of the three friends. The United States Supreme Court held that under the circumstances, defendant should have been allowed to cross-examine the third person and introduce the testimony of the three friends to whom he made the admissions. The court held that the hearsay rule should not be envoked because (a) there was considerable assurance of the reliability of the confession and the admissions; and (b) the third person was available in the courtroom and could have been examined by the State. In the instant case, not only was Rose absent from the trial, but there was also little assurance of reliability, in view of the fact that only defendant heard and testified to the alleged statements. We think that these differences preclude the exception to the hearsay rule as expressed in *Chambers*. See also *People v. Craven*, 54 Ill.2d 419, 299 N.E. 2d 1.

Further, we believe that there is another important difference between the facts here and in *Lettrich* and *Chambers*. In both of those cases, the defendants, who were accused of murder, would have been exculpated by the extrajudicial statements they sought to have admitted because those statements were the confessions of others. Here, however, Rose's alleged admissions, as testified to by defendant, were in the following colloquy:

"A. She kept on screaming: 'Well, he didn't know.' She said,

'The poor guy, he didn't know.'

And then she mentioned something about the paraphernalia, you know, about the paraphernalia was hers or something. It was incoherent. I was hearing some and wasn't hearing anything. Sometimes she—

Q. Did you hear Sergeant Jobe ask her any questions about narcotics?

A. Right, I did.

Q. Did you hear the answers she gave Sergeant Jobe?

A. I heard her claim that the paraphernalia was hers."

Assuming that the officers would have testified that she made such statements, they still would not necessarily have proven defendant innocent of the charge of possession of narcotics, as they referred only to the paraphernalia and not to the white powder.

Defendant maintains, essentially, that the examination of the officers should have been permitted because they would have corroborated his own testimony on two points—that she owned the narcotics and that defendant did not have knowledge of them. Although not specifically raised in his brief, we necessarily infer that the first point supports a hypothesis that her ownership of the narcotics negates defendant's possession thereof and that the second point supports a hypothesis that defendant did not have the knowledge of the narcotics, which is a necessary element of the offense of possession of narcotics.

The first hypothesis is clearly untenable, as title to narcotics is irrelevant in a prosecution for their possession. (*People v. Matthews*, 18 Ill.2d 164, 170, 163 N.E.2d 469; *People v. King*, 34 Ill.2d 199, 201, 215 N.E.2d 223.) The second hypothesis impels a consideration of the element of knowledge in the crime of possession of narcotics.

██ In order to support a conviction for the crime of possession of narcotics, *as stated in People v. Griffin*, 18 Ill.App.3d 873, 878, 310 N.E.2d 746:

"\* \* \* the State must prove the accused had knowledge of the presence of the narcotics and they were in his immediate possession and control. Such knowledge may be proved by evidence of acts or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics at the place where they were found. (*People v. Smith* (1960), 20 Ill. 2d 345.)"

The presence of narcotics or paraphernalia in a place over which the accused had control permits the inference, absent other facts and circumstances tending to give rise to a reasonable doubt, that the accused had knowledge of their presence and therefore possessed them (*People v.*

*McCoy*, 133 Ill.App.2d 416, 420, 273 N.E.2d 430; *People v. Bell*, 53 Ill.2d 122, 126, 290 N.E.2d 214; *People v. Neal*, 12 Ill.App.3d 525, 299 N.E.2d 532), and a prima facie case for knowing possession is thereby made. *People v. Minkin*, 133 Ill.App.2d 549, 551, 273 N.E.2d 729, citing *People v. Ciconte*, 102 Ill.App.2d 1, 243 N.E.2d 407.

In the instant case, defendant testified that Rose gave him packages, which she said should be hidden from the police, and he attempted to hide them in the stereo speaker housing. The trooper testified that he removed from that housing two plastic bags containing white powder and a third containing syringes, a needle and an eyedropper; that he could see white inside the bags through the plastic; and that he also saw white powder on defendant's right hand. In the face of this evidence, the trier of fact chose to disbelieve defendant's denial of knowledge of the narcotics. From our review of the record, we do not believe that Rose's purported corroboration of defendant's lack of knowledge would render the proof so unsatisfactory as to justify a reasonable doubt of his guilt and thereby require us to disturb the conclusion of the trier of fact. *Minkin; People v. Binns*, 27 Ill.App.3d 978.

Further, as we pointed out above, Rose's alleged statements to the police concerned only the paraphernalia and not the white powder; thus, it could be fairly said that if the statements were in fact made by her to the officers, she was committing herself only to the ownership of the paraphernalia and not to the heroin.

■■ Finally, we note that defendant himself testified to Rose's statements. The exclusion of evidence is not reversible error when it is subsequently received. *People v. Armstrong*, 80 Ill.App.2d 77, 86, 224 N.E.2d 675; *People v. Turner*, 82 Ill.App.2d 10, 22, 226 N.E.2d 667.

■■ Defendant next contends that the heroin was never introduced into evidence. However, defendant stipulated that the substance in State's Exhibit No. 7 (the plastic bags) was heroin.[1] In *People v. Manley*, 52 Ill.App.2d 315, 202 N.E.2d 109, this court held that where defendant stipulated that a package received by a police officer contained heroin, she thereby waived formal proof of that fact by introduction of the physical evidence thereof. We think that here, too, defendant's stipulation that Exhibit No. 7 was heroin waived any requirement that the State formally put the heroin itself into evidence.

Defendant's fourth contention is that the trial court erred in failing to order a presentence report and conducted an insufficient sentencing

---

[1] When defendant agreed to State's Exhibit No. 7, he reserved the right to withdraw his agreement so far as the weight and quantity of the substance was concerned. Later, he did so withdraw his stipulation, and at that time his attorney stated, "I'll stipulate to the substance being heroin."

hearing. He argues that the court did not order a presentence investigation and, in the hearing on aggravation and mitigation, heard only a brief statement concerning his background. Thus, he maintains that the court did not have enough information to make a properly informed sentencing decision.

■■ In support thereof, he points to section 5—3—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—3—1), which makes a presentence report mandatory. However, this provision is not applicable to sentences such as defendant's, which were pronounced prior to the effective date of the Code. (*People v. Long*, 20 Ill.App.3d 957, 960, 313 N.E.2d 281; *People v. Brezezinski*, 15 Ill.App.3d 509, 512, 305 N.E.2d 32; *People v. Robinson*, 13 Ill.App.3d 506, 511, 301 N.E.2d 55.) Under the prior law, a defendant who did not request a presentence investigation was held to have waived one. (*People v. Long*, 20 Ill.App.3d 957, 961, and cases there cited.) As this record does not show that defendant requested such an investigation, he is held to have waived it.

■■ Concerning defendant's claim that the hearing on aggravation and mitigation was insufficient, we note the following: That his own testimony at trial provided considerable information about himself; that his counsel announced ready for the hearing on aggravation and mitigation; that defendant spoke in his own behalf; and that there was no response to the court's inquiry, prior to pronouncing sentence, whether anyone had anything else to say. Under these circumstances, we are of the opinion that if defendant had any other evidence to offer in mitigation he had ample opportunity to do so, and his failure to offer such further evidence waived his right to complain now. *People v. Miner*, 17 Ill.App.3d 661, 664-65, 307 N.E.2d 624; *People v. Ellis*, 53 Ill.2d 390, 395-96, 292 N.E.2d 728; *People v. Stark*, 9 Ill.App.3d 455, 292 N.E.2d 222.

■■ Defendant also urges that his concurrent sentence of 1 to 2 years on the marijuana count is in excess of that authorized by statute.[2] The State concedes that defendant is a first offender and, being such, that the maximum period of incarceration for him "is any term less than one year." Thus, in accordance with our authority under Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4)), we reduce defendant's sentence on the charge of possession of marijuana to 11 months, to be served concurrently with the sentence for possession of heroin.

---

[2] Section 4(c) of the Cannabis Control Act (Ill. Rev. Stat. 1971, ch. 56½, par. 704(c)) provided that possession of more than 10 but less than 30 grams of marijuana was punishable by any term of not more than one year unless the offense was a subsequent offense, in which event the maximum sentence was 2 years and the minimum was 1 year.

Defendant finally argues that his sentence for possession of heroin is excessive, asserting that, although he has a good family background and employment record and was never before convicted of any offense, his minimum sentence is more than twice that required at the time[3] and that, therefore, his sentence does not adequately provide motivation for rehabilitation.

Article 1, section 11, of the Illinois Constitution of 1970 provides in pertinent part:

> "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. * * *"

We view the above-quoted language as imposing a constitutional requirement that rehabilitative potential be considered in setting sentences. (See *People v. Knox*, 3 Ill.App.3d 1050, 1054-55, 280 N.E.2d 10; *People v. Griffin*, 8 Ill.App.3d 1070, 1072, 290 N.E.2d 620.) In *People v. Roddy*, 9 Ill.App.3d 65, 66, 291 N.E.2d 264, the court quoted from *People v. Lillie*, 79 Ill.App.2d 174, 223 N.E.2d 716, as follows:

> "The hope of earlier release is a great incentive to a prisoner to participate in the educational and rehabilitation programs provided in modern penal institutions. Excessive minimum sentences, imposed by the courts, may defeat the effectiveness of the parole system by making mandatory the incarceration of a prisoner long after effective rehabilitation has been accomplished."

Defendant is a first offender and the record discloses he had a favorable work record and family background, factors which because they indicate a strong potential for early rehabilitation have led other reviewing courts to reduce minimum sentences. (*People v. Helms*, 133 Ill.App.2d 727, 734-35, 272 N.E.2d 228; *People v. Haynes*, 133 Ill.App.2d 873, 874-75, 272 N.E.2d 268.) Indeed, sentences have been reduced even where a defendant's record, as judged by the three criteria considered here, presented a poorer prospect for successful rehabilitation. (See *People v. Odom*, 8 Ill.App.3d 227, 228, 289 N.E.2d 663 (although divorced, defendant continued to help support family); *Knox* (defendant supported family but had prior misdemeanor record); *Roddy* (defendant, convicted of burglary, was on parole from a previous burglary conviction and had yet another conviction on his record).) In *People v. Pohle*, 19 Ill. App.3d 400, 311 N.E.2d 731, the court reduced a sentence for burglary where the defendant, a high school dropout who had been dishonorably

---

[3] Section 402(a)(1) of the Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, par. 1402(a)(1)) at that time provided a minimum punishment of 3 years for possession of more than 30 grams of heroin.

discharged from the Army and had been convicted of a misdemeanor, was working, enrolled in school, and had good family relations. In so doing, the *Pohle* court noted that in *People v. Hogue,* 1 Ill.App.3d 881, 275 N.E.2d 193, it had reduced the sentence of a defendant who was divorced and had been convicted of disorderly conduct, because the lower term provided the best chance for rehabilitation.

We note the possession of heroin is a Class 1 felony (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(a)), for which the minimum term now is 4 years "unless the court, having regard to the nature and circumstances of the offense and the history and character of defendant, sets a higher minimum term." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).) Because defendant is a first offender and it is indicated that his prospects for rehabilitation are reasonably good, we believe that the totality of the circumstances here warrant a reduction of his sentence.

■■ Accordingly, we reduce his minimum sentence on the heroin charge to 4 years. In so doing, we emphasize that we are deprecating neither the seriousness of the offense, nor the requirement of punishment therefor. Rather, we are recognizing that, as we stated in *People v. Johnson,* 29 Ill.App.3d 763, 331 N.E.2d 306, the Pardon and Parole Board is able, as we are not, to determine when an incarcerated individual actually has been rehabilitated. By reducing defendant's sentence and thereby providing an earlier possible parole date, we allow the Board greater flexibility both in encouraging defendant's rehabilitation and in paroling him if and when it determines that such rehabilitation has in fact been achieved. *People v. Roddy,* 9 Ill.App.3d 65, 66; *People v. Griffin,* 8 Ill.App.3d 1070, 1072.

The minimum sentence for the offense of possession of heroin is reduced to 4 years, and the sentence for the offense of possession of marijuana is reduced to 11 months to run concurrently with the sentence for possession of heroin. As so modified, the judgment is affirmed.

Affirmed as modified.

BARRETT, P. J., and DRUCKER, J., concur.